602 So.2d 825 (1992)
Buddy Ray HAMMETT, Sr.
v.
Margaret Jo Hammett WOODS.
No. 90-CA-0793.
Supreme Court of Mississippi.
May 27, 1992.
*826 Joseph R. Meadows, Meadows Riley Koenenn & Teel, Gulfport, for appellant.
Jim W. Rose, Gulfport, for appellee.
Before HAWKINS, P.J., and PRATHER and McRAE, JJ.
McRAE, Justice, for the Court:
Buddy Ray Hammett, Sr. appeals the May 14, 1990 order of the Harrison County Chancery Court granting Margaret Jo Hammett Woods' petition for modification of child support. We reverse the Chancellor's order to increase Hammett's support obligations as well as to reimburse Woods for certain transportation expenses. We affirm the Chancellor's refusal to allow Hammett to place past-due child support payments in a trust fund for the couple's minor disabled child as well as the award of attorney's fees to Woods.

I.

A.
Buddy Ray Hammett and Margaret Jo Hammett Woods were married on November 20, 1965, in Gulfport, Mississippi. They were granted a divorce on the grounds of irreconcilable differences on April 1, 1980. Custody of the couple's two minor children, Buddy Ray Hammett, Jr. and Bret Alan Hammett, was awarded to Woods. Hammett was ordered to pay $300.00 per month child support as well as various expenses relating to the education and training of the couple's disabled younger son.
The minor son, Bret, whose support is now at issue, has been profoundly deaf since birth. He has attended schools in Mississippi and Louisiana with special programs for the hearing impaired at no cost to either party. Bret became eligible for the Social Security Administration's Supplemental Security Income (SSI) program and Medicare benefits when he reached the age of eighteen on April 29, 1988. Medicare covers all of his medical expenses except hearing aids and hearing aid batteries.
Bret reached the age of majority on April 29, 1991. Since this action was initiated, he has been enrolled at the Southwest Center for the Hearing Impaired in San Antonio, Texas, at no cost to either Hammett or Woods.

B.
After the elder son, Buddy, reached the age of majority in December, 1987, Hammett, without petitioning the court, unilaterally reduced his child support payments by fifty percent to $150.00 per month. Woods subsequently filed a Petition for Citation for Contempt and to Modify Final Decree in the Chancery Court of Harrison County on December 12, 1989. In addition to seeking payment of past-due child support, she sought reimbursement for certain travel expenses incident to Bret's special education. She further petitioned for an increase in child support payments "to a sum of $600.00 per month or in an amount equal to 17% of the Defendant's adjusted *827 gross income if same should exceed $600.00 per month."
The Chancellor ordered Hammett to pay a total of $10,242.60, which represented past-due child support and interest in the amount of $4,308.00; reimbursement for expenses incurred by Woods for transporting Bret to and from schools in Mississippi and Louisiana totalling $3,434.60[1], and attorney's fees of $2,500.00. He further found a material change of circumstances warranting an increase in child support payments to $750.00 per month. Finally, the Chancellor denied Hammett's request to place the admittedly past-due child support payments in a trust fund for Bret's future benefit.

II.
Hammett first contends that the Chancellor erred in ordering him to reimburse Woods for expenses she incurred in transporting Bret to and from school. Under the terms of the original decree, Hammett was obligated to pay "all educational expenses for the minor children to attend public schools and all expenses for Bret Alan to attend a special school or obtain necessary therapy for his hearing problems." The term "educational expenses" was defined therein as including, but not limited to, "boarding expenses, tuition fees, costs of books and supplies, meals, and other requisite expenses to obtain an education."
In appeals from Chancery Court, our scope of review is limited. We will not reverse a Chancellor's findings of fact where they are supported by substantial credible evidence in the record. Clark v. Myrick, 523 So.2d 79, 80 (Miss. 1988). The record indicates that Bret attended Popps Ferry Elementary School in Biloxi, the nearest school to the family's home in Gulfport with a program for hearing-impaired children, until the end of the fall, 1981 school term. Although the parties stipulated that the mileage expenses of transporting Bret to and from school between April, 1980, and December, 1981, amounted to $942.00, there is insufficient evidence in the record to support the Chancellor's findings that "[t]ransportation is found to be a necessary part of Bret's education and Hammett is responsible for the payment of same... ."
Hammett further asserts that the Chancellor erred in ordering him to reimburse Woods in the amount of $2,300.60 for the expenses she incurred in transporting Bret to and from the Louisiana School for the Deaf in Baton Rouge every other week-end. The parties are in dispute over the existence of an oral agreement between them, made in 1983, to share equally these expenses. However, agreements of this type are only enforceable if pleaded before and recognized by the court and incorporated into the terms of the divorce decree. Lewis v. Lewis, 586 So.2d 740, 743-745 (Miss. 1991); Rutledge v. Rutledge, 487 So.2d 218 (Miss. 1986). Further, we find that there is substantial evidence that the transportation expenses incurred were not necessary for Bret to attend the school, but, rather, were voluntarily assumed by Woods. The record indicates that while Woods was living in Louisiana, she could have sought reimbursement from the school for Bret's travel expenses, but chose not to. After Woods moved back to Mississippi, Bret could have ridden on the school's bus to Slidell, where Woods could have met him, greatly reducing the expenses incurred. However, she opted not to take advantage of this service. In the alternative, rather than establishing a guardianship to enable him to continue to attend school in Louisiana, Bret could have been enrolled at the Mississippi School for the Deaf in Jackson. Woods likewise rejected this option.

III.
Hammett further contends that the Chancellor erred in increasing his child support obligations from $300.00 to $750.00 per month, or in the alternative, that the *828 amount was excessive. Although decisions regarding modification of child support are within the discretion of the Chancellor, we will reverse when he is manifestly in error in his finding of fact or has abused his discretion. Lawrence v. Lawrence, 574 So.2d 1376, 1382 (Miss. 1991); Powers v. Powers, 568 So.2d 255, 258 (Miss. 1990); Carpenter v. Carpenter, 519 So.2d 891, 894-895 (Miss. 1988). A variety of factors must be considered when modifying child support agreements. See, Cox v. Moulds, 490 So.2d 866 (Miss. 1986); Adams v. Adams, 467 So.2d 211 (Miss. 1985). While the father's ability to pay is but one of the factors supportive of an increase in child support payments, the paramount concern is the needs of the child. Cupit v. Cupit, 559 So.2d 1035 (Miss. 1990). Thurman v. Thurman, 559 So.2d 1014, 1018 (Miss. 1990). Furthermore, there must be a change in circumstances affecting either the child or his parents which was not reasonably foreseeable at the time of the original decree. Morris v. Morris, 541 So.2d 1040, 1042-43 (Miss. 1989).
Keeping these considerations in mind, we do not find any substantial evidence in the record to support the Chancellor's findings, or which warrant such a dramatic increase in support obligations. We recognize that Hammett's income and resources have increased over time, but neither exponentially nor unforeseeably. Woods' income, too, has steadily increased. Bret has not required any extraordinary or unexpected care or treatment. There is no evidence that any of his needs have gone unmet.
The record indicates that Bret's actual expenses average approximately $261.00 per month, far below the amount awarded by the Chancellor. At the time the modification was entered, he was attending the Louisiana School for the Deaf, where he boarded during the nine-month school term, at no expense to either Hammett or Woods. Since he turned eighteen, Bret's medical expenses, with the exception of hearing aids and hearing aid batteries, have been covered by Medicare. He received SSI payments in the amount of $268.00 per month during those months when Hammett paid $150.00, and $106 for the month that Hammett paid the full $300.00. Despite our concern for the support of minor children, especially where special needs must be taken into consideration, we cannot uphold an award so far in excess of actual expenses. Jellenc v. Jellenc, 567 So.2d 847, 848 (Miss. 1990).
Furthermore, the Chancellor's award of $750.00 exceeds the $600.00 amount Woods had requested. She sought, in the alternative, seventeen percent of Hammett's adjusted gross income, pursuant to the Child Support Guidelines, Miss. Code Ann. § 43-19-101 (Supp. 1989). Effective April 4, 1990, one month before the Chancellor's May 14, 1990, decision was rendered, the guidelines were amended to provide for an award of fourteen percent for a single child. Miss. Code Ann. § 43-19-101 (Supp. 1990). We have, however, held that the Child Support Guidelines are nothing more than suggested guidelines and "must not control the Chancellor's award of child support." Thurman v. Thurman, 559 So.2d 1014, 1017 (Miss. 1990). Using this figure as a measuring stick, however, and applying it to Hammett's 1989 adjusted gross income of $50,000, we calculate a monthly figure of approximately $583.33, well below the Chancellor's award but still in excess of Bret's actual needs.
Although we find that the Chancellor's award of $750.00 is excessive and unsupported by the evidence in the record, we are compelled to address Hammett's assertion that his child support obligations should not be increased because to do so would greatly reduce the amount of Medicare and SSI benefits for which Bret is eligible. We have held that SSI benefits received by a minor child based on his parent's disability or retirement are considered an alternative source of payment which should be credited toward satisfaction of child support obligations. Bradley v. Holmes, 561 So.2d 1034, 1035 (Miss. 1990); Mooneyham v. Mooneyham, 420 So.2d 1072, 1073 (Miss. 1982). However, we have not previously considered the impact of the eligibility for or receipt by a disabled *829 child of SSI benefits on the support obligations of a parent. Other jurisdictions, however, have addressed the question and held that receipt of such benefits does not reduce parental support obligations. Not wanting to burden the public when the parents are more than able to provide for the child's support, we find this to be a sound policy. In Anderson v. Powell, 235 Ga. 738, 221 S.E.2d 565, 566 (1975), the Georgia Supreme Court held that benefits received by a disabled minor child from the Social Security Administration and the Cobb County Department of Family and Children's Services could not be credited against his father's support obligations. Likewise, the Ohio court, in Oatley v. Oatley, 57 Ohio App.2d 226, 11 O.O.3d 260, 387 N.E.2d 245 (1977), held that pursuant to 42 U.S.C.A. § 1381, 1381(a), the SSI benefits received by a disabled minor child neither altered the father's obligation to pay child support nor constituted a change of circumstances warranting a modification of the divorce decree. In Swanson v. Swanson, 372 N.W.2d 420, 423 (Minn.App. 1985), the Court held that although a Minnesota statute allowed a child's AFDC benefits to be considered a change in circumstances that may justify a modification of a child support agreement, "the primary obligation for the support of the child should fall on the parents and not the public."

IV.
Hammett sought to have the admitted arrearage of some $4308.00 in child support payments placed in a trust fund that would begin to generate a monthly income for Bret when he reached the arbitrarily-designated age of thirty-six. We affirm the Chancellor's refusal to so allow. We have repeatedly held that past-due child support payments become vested as of the date they were due and cannot be modified. Thurman, 559 So.2d at 1017; Brand v. Brand, 482 So.2d 236 (Miss. 1986).
The record indicates that the Chancellor's refusal of Hammett's request to put the past-due child support monies in a trust fund was founded upon concern for Bret's future eligibility for SSI and other governmental assistance for the disabled. Failure to comply precisely with the complex laws governing these programs could well jeopardize Bret's security upon reaching the age of twenty-one, when his father's support obligations cease. Our review of 42 U.S.C.A. § 1382(a) and § 1382(b), which define and discuss the treatment of income and resources available to claimants for purposes of determining SSI eligibility, reveal that the statutes are fraught with traps for the unwary who are not conversant with the many restrictions and exceptions. We note, for example, that § 1382b(a)(4) provides an exclusion for "such resources of an individual who is blind or disabled and who has a plan for achieving self-support approved by the Secretary, as may be necessary for the fulfillment of such plan." (emphasis added) Faced with the probability that Bret will be entitled to these benefits and programs long after his parents are gone and that his future eligibility could well be precluded by failure now to comply strictly with always-changing rules and regulations, the Chancellor would have abused his discretion by allowing Hammett to place the funds in trust for Bret's benefit that was not established and maintained in accordance with the SSI and other applicable regulations and guidelines.

V.
The award of attorney's fees in modification of divorce decree cases is within the discretion of the Chancellor, and will not be reversed unless manifestly wrong. Cumberland v. Cumberland, 564 So.2d 839 (Miss. 1990); Cheatam v. Cheatam, 537 So.2d 435, 440 (1988). Hammett contends that the Chancellor erred in awarding Woods attorney's fees in the amount of $2,500, asserting that she neither demonstrated her inability to pay attorney's fees nor the reasonableness of those fees pursuant to the criteria set forth in McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982).
Woods initiated this action when Hammett unilaterally reduced his child support *830 payments by fifty percent when Buddy, Jr. turned twenty-one without first seeking court approval. The record indicates quite clearly that the parties operated under widely disparate financial circumstances, one of the factors enumerated in McKee. Hammett's earnings are more than triple those of Woods and his investments and other resources, far greater. Further, the record indicates that Woods was able to pay only $500 of the $1,000 retainer required by her attorney. This Court has held that when a party is able to pay attorney's fees, award of attorney's fees is not appropriate. Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990). However, where the record shows an inability to pay and a disparity in the relative financial positions of the parties, we find no error. Powers v. Powers, 568 So.2d 255 (Miss. 1990).
We disagree with Hammett's contention that the award was excessive. In determining the reasonableness of attorney's fees, we have written that:
The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of its question at issue, as well as the degree of responsibility involved in the management of the cause, the time and amount of labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
McKee, 418 So.2d at 767.
We find that the evidence in the record indicates that the legal fees incurred by Woods were reasonable in light of the issues raised, both in the number of hours billed and the rate charged.

VI.
It is not the province of this Court to substitute its opinion for that of the fact-finder. Cheatham v. Cheatham, 537 So.2d 435 (Miss. 1988). However, the record demonstrates neither a material change in circumstances nor a present need to warrant the modification in child support. Further, we find that the transportation expenses incurred by Woods were not necessary for Bret to receive the special education he received.
Accordingly, we reverse the Chancellor's orders requiring Hammett to increase his child support payments and to reimburse Woods in the amount of $3,434.00 for transportation expenses. We do, however, affirm the Chancellor's refusal to allow Hammett to place admittedly past-due child support payments in a trust fund for Bret, as well as the award of attorney's fees to Woods.
AFFIRMED IN PART; REVERSED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
NOTES
[1] Both parties cite a figure of $3,494.60, however, the figures cited in the Chancellor's order totaled $3,434.60.