# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00970-SCT
## CONSOLIDATED WITH
## NO. 91-CA-00172-SCT

*GULF COAST RESEARCH LABORATORY, HAROLD*
*D. HOWSE AND DAVID COOK*

*v.*

*KUMAR AMARANENI, ADMINISTRATOR OF THE*
*ESTATE OF AMARANENI VENKATARAMIAH AND*
*G. J. LAKSHMI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/9/2001 |
| TRIAL JUDGE: | HON. JAYE A. BRADLEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | SANDRA S. MOHLER |
| | JON MARK WEATHERS |
| | LEE PARTEE GORE |
| ATTORNEYS FOR APPELLEES: | EARL L. DENHAM |
| | WENDY C. HOLLINGSWORTH |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | VACATED AND REMANDED - 05/13/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This employment termination case brought under 42 U.S.C. § 1983 arises from a judgment entered in the Chancery Court of Jackson County in favor of Dr. Amaraneni Venkatramiah and Dr. G.J. Lakshmi. The chancery court found that Dr. Harold D. Howse and Dr. David Cook of the Gulf Coast Research Laboratory (GCRL) violated the plaintiffs' rights in firing them and awarded a judgment in the amount of

$210,000 to Venkatramiah and $180,000 to Lakshmi. Additionally, attorney's fees were awarded in the amount of $71,000.

¶2. Because this case has been ongoing for over a decade, a brief summary is needed for the sake of continuity between former appeals and current appeals. This case was originally filed on May 18, 1987, in the Chancery Court of Jackson County by Venkatramiah and Lakshmi asserting claims under 42 U.S.C. § 1983. Plaintiffs alleged that they had been unlawfully discharged from their employment at GCRL without due process and because of their race and origin. A final judgment was entered on January 16, 1991, in favor of the plaintiffs' with awards of $210,000 to Venkatramiah and $180,000 to Lakshmi and attorney's fees in the amount of $71,000.

¶3. The defendants appealed from this judgment, and in *Gulf Coast Research Lab. v. Amaraneni*, 722 So. 2d 530 (Miss. 1998) (*"Amaraneni I"*), this Court reversed and remanded the case to the trial court for more specific findings and conclusions of law on a number of issues. This included findings of whether the defendants intentionally discriminated against the plaintiffs, whether the declared financial exigency was genuine, and whether the plaintiffs had valid contracts for permanent employment. The Court also instructed the chancellor to clarify the issues of damages and attorney's fees.

¶4. On remand the original chancellor was no longer on the bench, and the successor chancellor recused himself, requiring assignment of the case to yet a second successor chancellor, Chancellor Bradley. Chancellor Bradley issued findings of fact and conclusions of law, as well as a judgment on October 10, 2001, reaffirming the original 1991 judgment in favor of the plaintiffs.

¶5. We conclude that the record is completely insufficient to support the findings of the chancellor. We, therefore, vacate and remand for a new hearing on the merits.

**FACTS**

2

¶6.     The facts of this case are adequately set out by this Court in *Amaraneni I*.

## DISCUSSION

### I.     Subject Matter Jurisdiction.

¶7.     We have examined this issue very carefully, find it to be without merit and therefore unnecessary of discussion.

### II.     Sufficiency of the Record.

¶8.     We apply a well-settled, but limited, standard of review when considering a chancellor's decisions. *Frierson v. Delta Outdoor, Inc.*, 794 So.2d 220, 222 (Miss. 2001). Under this limited standard, we "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Gannett River States Publ'g Corp. v. City of Jackson*, 866 So.2d 462, 465 (Miss. 2004). That is, "if the chancellor's findings are unsupported by substantial credible evidence, *we must reverse*." *Frierson*, 794 So.2d at 222 (emphasis added) (citing *Hammett v. Woods*, 602 So.2d 825, 827 (Miss. 1992)).

¶9.     GCRL argues that the successor trial judge should have ordered a new trial instead of making specific findings of fact from the record. It claims that since the successor judge did not have the opportunity to hear the witnesses live and observe their demeanor, the successor chancellor's findings do not have the reliability required for review by an appellate court. GCRL further asserts that the successor chancellor could not have found substantial evidence in the record to support her findings of facts and conclusions of law.

¶10.    The lack of a sufficient record to support the chancellor's findings of fact and conclusions of law was clearly recognized and addressed by this Court in *Amaraneni I*. It was noted that there were "more

3

than two thousand omissions by the court reporter," and "the court reporter further stated that the record would have been 5,000 pages but she only transcribed 1,988 pages, leaving more than 3,000 pages not transcribed. *Amaraneni I*, 722 So. 2d at 545 (McRae, J. dissenting). Also noteworthy is the following statement: "Every effort was made to have the record in this case corrected; it was not. Sixteen exhibits remain missing. Numerous motions to compel and for sanctions were filed to no avail. The court reporter since has retired, leaving a record still laden with omissions." *Id.* In fact, this record was so astoundingly insufficient that this Court agreed only to reverse and remand, but could not agree upon a disposition thereafter. The Court stated: "Because we cannot agree on any instructions to guide the lower court, we remand the case to be decided on such principles as the trial judge may deem right." *Id.* at 530.

¶11. On appeal anew, nothing has changed to alter this issue. In fact, it is now aggravated. Further complicating the matter is the fact that Chancellor Robertson who tried the case was no longer on the bench when we remanded the case. The case was thus assigned to Chancellor Watts. A hearing on this issue was conducted by Chancellor Watts on February 24, 1999, and again on June 21, 1999. The parties were given more than ample time to review the existing record. Chancellor Watts, on March 21, 2000, signed an agreed order directing the parties to "submit Proposed Findings of Fact and Conclusions of Law to the court by June 8, 2000, after which the parties are directed to confer with the Court Administrator to **set this matter for trial** ." Thus, it appears from this order that the parties and chancellor anticipated trial of the case at some point in the future. The record is replete with numerous requests by the parties for extensions of time in 3 month intervals within which to complete a thorough and adequate review of the record. The record reflects that both sides acknowledged that the existing record is wholly inadequate. It appears that the parties thoroughly exhausted all efforts to secure a complete record from the court

4

reporter for both the chancellor and this Court to consider, all to no avail. It is equally obvious that the problem was solely the fault of the court reporter rather than the trial judge or the parties.

¶12. After apparently ruling on the issue of retrial herein, Chancellor Watts was invited by plaintiffs' counsel to recuse. Counsel claimed that the case was extremely complicated and would require a tremendous amount of time which he suggested that Chancellor Watts did not have to give to this particular case. Counsel filed before this Court on December 14, 1998, a Petition To Appoint A Special Master Or Alternatively A Special Judge, suggesting that the original trial judge, Chancellor Robertson, or alternatively, former Chancellor Robert Oswald be appointed to try the case. However, by order of Chief Justice Lenore Prather on December 30, 1998, this Court declined to make that appointment. Subsequently, by order on January 21, 2001, Chancellor Watts did in fact recuse.

¶13. Review of the record reflects that the very next item that appears is Chancellor Jaye Bradley's findings of fact and conclusions of law, dated September 12, 2001. Judgment was entered on October 9, 2001. Chancellor Bradley did not conduct a hearing on this issue of retrial or decision based upon use of the existing record. Chancellor Bradley did not conduct a new trial, but merely examined the existing record and made a decision therefrom without a finding on the record, in a separate order or otherwise that the existing record was sufficient. Chancellor Bradley should not have decided this case on the existing record without conducting a hearing on the issue. Alternatively, she could have found that she could proceed on the existing record, given that Chancellor Watts's prior orders of March 22, 2000, and June 9, 2000, clearly contemplated and so stated that a new trial would be held in this case.

¶14. Our general rule is the chancery court as trier of fact has the primary authority and responsibility to assess the credibility of witnesses. *Dunn v. Dunn*, 786 So. 2d 1045, 1049 (Miss. 2001). The trial judge "who hears the witnesses live [and] observes their demeanor. . . is by his very position far better

5

equipped to make findings of fact which will have the reliability" required for review by an appellate court. *Amiker v. Drugs for Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000). As a result, a successor judge, even one with access to a printed record of the case, "sits in an inferior position to the judge who presided over the trial of the case." *Id.* As it exists now, the record here does not support the chancellor's decision regarding findings of fact and resulting conclusions of law. Without an adequate record a successor judge to one who actually tried the case is severely handicapped. Such is an impossible situation. Here, in fact, the current chancellor is actually the third successor judge to consider this record and attempt to make findings of fact and conclusions of law. Thus, the undertaking of the third successor chancellor in deciding this case and now this Court in review is both insurmountable and impossible. What is totally lacking due to an unchanged and incomplete record is any substantial evidence to support certain findings of fact and conclusions of law by Chancellor Bradley. This is especially so in view of the fact that this Court on several issues addressed in *Amaraneni I* clearly stated that the existing record did not support the previous opinion of the chancellor. The bottom line unfortunately is that this record has been and still is woefully and completely inadequate. Without substantial evidence in the record to support the findings of facts on these issues, they cannot stand. *Browder v. Williams*, 765 So. 2d 1281, 1284 (Miss. 2000).

¶15.    A majority of this Court previously acknowledged that the record was woefully inadequate to support the findings of fact and conclusions of law. Based upon our review of the record now, nothing has changed. The record remains unchanged and is still inadequate to support the chancellor's decision. Regrettably, we must vacate and remand with instructions for a new trial as the existing record will never be sufficient to allow for a decision. Because we vacate and remand for a new trial, we need not consider the remaining assignments of error.

**CONCLUSION**

6

¶16.   For the foregoing reasons, the trial court's judgment is vacated, and this case is remanded to the

Chancery Court of Jackson County for a new trial.

¶17.   **VACATED AND REMANDED.**

      **WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**