3 So.3d 790 (2008)
James Calvin CHAPMAN, Appellant
v.
Debbie WARD, Appellee.
No. 2007-CA-00030-COA.
Court of Appeals of Mississippi.
November 12, 2008.
Rehearing Denied March 3, 2009.
*792 Sharon Patterson Thibodeaux, Brandon, attorney for appellant.
Robert W. Long, Canton, attorney for appellee.
EN BANC.
CARLTON, J., for the Court.
¶ 1. James Calvin Chapman and Debbie Ward were granted a divorce based on irreconcilable differences in 2001. Debbie was granted primary custody of the couple's four children. James was granted visitation and ordered to pay child support.
¶ 2. In 2006, James filed a petition to hold Debbie in contempt for failing to grant him visitation and to modify the original judgment. Debbie filed an answer and a counterclaim. The chancellor entered an order granting James additional visitation, and relieving him of paying future child support. James was ordered, however, to pay $14,840.85 to Debbie for back child support arrearages already vested and due.
¶ 3. James now appeals and raises the following issues for our review:
1. Did the chancery court commit manifest error in looking to the transcript of the court's ruling of July 9, 2001, in interpreting James's child support obligation rather than looking at the judgment of divorce entered on March 12, 2002, nunc pro tunc July 9, 2001?
2. Did the chancery court commit manifest error when it failed to grant James a credit/set-off against his child support arrearage for sums Debbie received from the Social Security Administration for lump-sum back payments on behalf of the minor children of the parties?
¶ 4. We find no error and affirm the chancery court.

FACTS
¶ 5. James and Debbie were divorced by an entry of judgment of divorce on March 12, 2002, nunc pro tunc July 9, 2001. Debbie was awarded primary physical custody of the couple's four children. James and Debbie were awarded joint legal custody of the children. James was unemployed at the time of the divorce due to a work-related injury. He was awaiting a hearing with the Mississippi Workers' Compensation Commission.
¶ 6. Under the judgment of divorce, James had the following child support obligation:
[T]he husband shall pay child support 24% of his adjusted gross income with *793 said support due the first month he earns a paycheck and continuing on the 1st day of each month until the minor children are emancipated and with the appropriate withholding order entered.
¶ 7. The transcript of the divorce trial clearly reflects that James knew that he would be expected to pay Debbie 24% of any income he received. James told the chancellor that he was awaiting payment for a workers' compensation claim. However, James had been unemployed since the divorce and had not paid any child support whatsoever at the time of the hearing in this case. He did, however, receive workers' compensation benefits beginning in October 2002, at which time the court-ordered child support payments began to accrue and vest. James received separate payments of $16,000, $12,165.92, and $26,250. James was ordered by the chancellor to pay 24% of the total of these sums, with interest, as back child support arrearages.
¶ 8. James was determined by the Social Security Administration to be totally disabled in late 2005. As a result, Debbie subsequently received three lump-sum back payments from Social Security for the benefit of the three youngest children.[1] The record is unclear as to when the payments were actually received, but it appears they were received sometime in 2006. In addition to the lump-sum payments, Debbie also receives a monthly benefit check from the Social Security Administration for the benefit of the three minor children. Even though we can only surmise that the benefits were received in 2006 by implication from the date of the application for benefits, the record is clear that James had already been in default for approximately four years for his failure to pay any child support payments from the workers' compensation benefits he received beginning in October 2002.
¶ 9. James filed a "Petition to Find Defendant in Contempt and to Modify Judgment of Divorce" on March 9, 2006, in the Chancery Court of Madison County. James sought to have the judgment of divorce modified[2] due to his disability to require that the social security benefits payable for the benefit of the minor children stand in lieu of the past arrearages and also future child support payments yet due.[3]
¶ 10. Debbie filed her "Answer to Petition to Find Defendant in Contempt and to Modify Judgment of Divorce" along with a "Counterclaim for Citation of Contempt and Modification" on June 14, 2006. In her counterclaim, Debbie asked the court to find James in contempt for his default in child support due for the approximate four-year period in which James failed to pay child support of 24% of the workers' compensation benefits along with 24% of any monthly unemployment benefits and/or workers' compensation benefits he received.
¶ 11. On August 15, 2006, the court granted part of the relief requested by James and part of the relief requested by Debbie. Without articulating the policy or procedure, the chancellor followed established *794 procedure in case law for addressing arrearages and considering a modification of child support in a case where the noncustodial parent comes to court with unclean hands. See Lane, 850 So.2d at 126(¶ 11). He addressed the arrearages in a cleansing judgment and then modified James's future support obligation prospectively, giving him credit for an alternate source of payment of child support. The chancellor ordered James to pay Debbie, the custodial parent, what he owed in child support arrearages, plus interest, but the chancellor also gave James credit prospectively for the social security benefits paid to the three minor children as an alternate source of payment as the child support became due. He also ordered the social security benefit payments be made directly to Debbie by Social Security in the future, thereby relieving James of future support obligations. Specifically, the court entered its "Opinion and Final Judgment" ordering James to pay Debbie $15,844.26, the child support due in arrearages, by September 11, 2006, and relieving James of any further child support obligation. The court later amended its ruling to correct a calculation error and ordered James to pay $14,840.85, the child support arrearages due, as child support from the workers' compensation benefits he received. This judgment cleansed James of his unclean hands due to the arrearages and allowed the chancellor to modify James's support obligation prospectively.

DISCUSSION
¶ 12. This Court has explained our standard of review in domestic relations cases as follows:
This Court has a limited standard of review in examining the decisions of a chancellor. A chancellor's findings will not be disturbed upon review by this Court unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard. The standard of review employed by this Court for review of a chancellor's decision is abuse of discretion. The standard of review for questions of law is de novo.
Burnett v. Burnett, 792 So.2d 1016, 1018-19(¶ 6) (Miss.Ct.App.2001) (internal citations and quotations omitted).

I. Whether the chancellor erred in looking to the transcript of the court's ruling of July 9, 2001, in interpreting the child support obligation, rather than looking at the judgment of divorce entered Mach 12, 2002, nunc pro tunc July 9, 2001.
¶ 13. James argues that the chancellor should not have relied on the trial transcript to determine that he owed Debbie child support from his workers' compensation earnings. Both Mississippi Code Annotated section 43-19-101(3)(a) (Rev.2004) and the transcript of the divorce hearing are, however, perfectly clear that workers' compensation benefits are income for purposes of child support assessment. James clearly understood what the chancery court intended in its initial decision. The chancellor specifically advised James that child support was payable from "income from any source.... If you get income and it is not where a wage order is applicable, then, you're obligated to take 24 percent of that and send it to [Debbie]." James responded, "Yes, sir." The court was perfectly within its right to look at the transcript to clarify the court's and James's understanding of the divorce decree. See S(c)holtz ex rel. Barnett Nat. Bank v. Hartford Accident & Indem. Co., 88 F.2d 184, 185 (5th Cir.1937) ("[E]very judgment may be construed and aided by the entire record."). See also Spearman v. J & S Farms, Inc., 755 F.Supp. 137, 140 *795 (D.S.C.1990) (a court may resort to the record if it finds the meaning of a judgment is ambiguous). This issue is without merit.

II. Whether the chancellor erred in failing to grant James a credit/set-off against his child support arrearage for sums Debbie received from the Social Security Administration for lump-sum back payments on behalf of the minor children of the parties.
¶ 14. James asserts in his remaining argument that the chancellor erred in not granting him a credit against his child support arrearage for the Social Security Administration's award of benefits to the minor children. We disagree. The chancellor did not commit manifest error in ruling that James owed Debbie the sum of $14,840.85 as child support arrearages due from the workers' compensation benefits he received beginning in 2002. Additionally, the chancery court did not commit manifest error by refusing to allow James a credit or set-off against this child support arrearage due for sums later received by Debbie in 2006 from the Social Security Administration as a result of James's disability. James did not come to court with clean hands and was not entitled to such.
¶ 15. This Court recently held in Keith v. Purvis, 982 So.2d 1033, 1036(¶ 8) (Miss. Ct.App.2008) (citations omitted), that "Mississippi law is clear that social security benefits received by a minor child based on a non-custodial parent's retirement or disability are an alternate source of satisfying court-ordered child support obligations and are credited toward the discharge of those obligations." However, Keith does not stand for the proposition that social security benefits received in lieu of child support may be used to satisfy child support arrearages. This Court held that "[s]ocial security benefits may be credited against a non-custodial parent's support obligation up to the amount of the support obligation." Id. at 1037(¶ 12) (citing Mooneyham v. Mooneyham, 420 So.2d 1072, 1074 (Miss.1982)) (emphasis added).
¶ 16. In Keith, Jackie Keith was ordered to pay child support to Deanna Purvis. Keith, 982 So.2d at 1035(¶ 3). Keith timely satisfied his obligation each month. Id. at (¶ 4). Keith was later declared disabled by the Social Security Administration. Id. at (¶ 3). As a result of his disability, Keith's dependent child received a lump-sum payment covering the same period of time for which Keith had already paid support. Id. The chancellor in Keith did not allow Keith any credit toward any future support obligations and likewise refused to allow any reimbursement for any alleged overpayment. Id. at (¶ 5).
¶ 17. This Court held in Keith that "social security benefits may be credited against a noncustodial parent's support obligation up to the amount of the support obligation." Id. at 1037(¶ 12) (citations omitted).[4] "Several courts that have specifically considered the mechanics of applying credit for a lump-sum payment of retroactive disability benefits adhere to the general rule that social security benefits may be credited against support obligations only for the period in which the benefits are actually received." Id. at *796 (¶ 13) (citations omitted). The courts adhere to this rule based on the importance of meeting the current needs of children and protecting their right to regular and uninterrupted support. Id. (citations omitted). Otherwise, noncustodial parents would have an incentive to withhold child support payments in the hope that future benefits paid to the child would satisfy the child support they owed. Id. (citations omitted).
¶ 18. Like the analysis in Keith, and the authority cited therein, allowing credit to James for his arrearages for his failure to pay child support from his workers' compensation benefits would encourage noncustodial parents to suspend payment while awaiting the receipt of workers' compensation benefits, social security benefits, or other income, and it also would give them ammunition to pick and choose from which income sources they wish to pay child support.
¶ 19. Precedent does not allow the noncustodial parent to receive credit for arrearages, only credit for the current support due. Id. at 1038(¶ 18). Furthermore, to allow James credit for arrearages when he failed to pay child support from his workers' compensation benefits clearly conflicts with the policy of meeting the child's current needs through receipt of regular uninterrupted child support payments. Id. at 1037(¶ 13) (citing Newman v. Newman, 451 N.W.2d 843, 844 (Iowa 1990)).
¶ 20. James cites Professor Deborah Bell's treatise, Bell on Mississippi Family Law, 338 (Nautilus Publishing Co.2006) as authority for the proposition that social security benefits paid to a child as a result of the payor's employment can offset child support arrearages. However, the cases cited by Professor Bell do not support such a proposition. Professor Bell relies on Mooneyham, 420 So.2d at 1073; Hammett v. Woods, 602 So.2d 825 (Miss.1992); and Bradley v. Holmes, 561 So.2d 1034, 1035-36 (Miss.1990).
¶ 21. James's reliance on those cases, and on Professor Bell's treatise, is misplaced. There is no authority in Mooneyham to allow social security payments to be used to satisfy the noncustodial parent's debt of past-due child support payments. In Mooneyham, the noncustodial father, Richard, was allowed to offset his child support obligation through social security disability payments which were paid directly to his child. Mooneyham, 420 So.2d at 1072. However, Richard's child support payments were not in arrears. Id. Rather, he had faithfully met his support obligations. Id. The facts in Mooneyham reflect that Richard had been receiving a check for $77 per month in social security payments for the benefit of the child, which he mailed to her monthly. Id. at 1073. The custodial parent filed for and received direct payment of the social security benefit, at which time the payment was increased to $135.70 per month. Id. Richard mailed the balance of his $150 child support obligation, totaling $15.30 per month, each month to the child. Id. Though he did not seek a modification of child support at that time, through social security payments and supplemental payments made by Richard, the child support obligation was continuously met. Id. Thus, while Richard was entitled to have his child support obligations credited by the amount paid directly to the child by the Social Security Administration, the extension of this holding as authority to allow one with unclean hands to satisfy child support arrearage with social security benefits is improper. The chancery court in Mooneyham attempted to find Richard in arrears because he failed to obtain a modification of his child support and decreased his payment without court permission to *797 make up the difference between his support obligation and the social security benefit payments. However, the Mississippi Supreme Court acknowledged that he was indeed entitled to a credit for those amounts paid directly to the child, so there was in fact no arrearage. Id. at 1073.
¶ 22. Judge Barnes's dissent improperly cites to dicta in a footnote at the end of the opinion in Keith, in which the dissent claims this Court cited Mooneyham for the proposition that the supreme court allowed arrearages to be satisfied out of social security benefits. Keith, 982 So.2d at 1039 n. 3. However, the footnote in Keith was not a holding but rather an in artful attempt to acknowledge that the supreme court had impliedly held that crediting social security benefits against child support arrearage does not constitute an impermissible retroactive modification of support. Id. The footnote does not hold this proposition and does not directly cite Mooneyham. Rather, the introductory signal used at the end of the acknowledgment was the word "see," which means that the proposition is not directly stated by the cited authority, but obviously follows from it. The Bluebook: A Uniform System of Citation R. 1.2, at 46 (Columbia Law Review Ass'n et al. Eds., 18th ed.2005). Keith made this gratuitous acknowledgment in its resolution of a related issue of reimbursement of benefits. Keith, 982 So.2d at 1039(¶ 22).
¶ 23. The dissent's use of this footnote as authority as opposed to the actual facts of the case of Mooneyham is an example of the danger of unnecessary dicta in an opinion. Nonetheless, dicta or not, the facts and holding of Mooneyham speak for themselves. In Mooneyham, the noncustodial parent, Richard, was not in default and did not have unclean hands when he came into court. Mooneyham, 420 So.2d at 1072. The supreme court gave retroactive credit to the father for social security payments that the custodial parent received directly for support as it came due. Id. at 1073-75. However, the facts in Mooneyham are clear that at no time did the support obligation go unsatisfied. Id. at 1073. The problem, as addressed in Mooneyham, arose when the mother began receiving a greater amount directly from the Social Security Administration for the benefit of the child. Id. The noncustodial parent in Mooneyham reduced his child support payment to cover the difference between the benefit payment and the support obligation without first seeking a modification. Id. However, child support was paid each month and no arrearage or default existed. Id. The noncustodial parent in Mooneyham did not have unclean hands at the time, and the court retroactively recognized that he paid his support as it was due and that he was not in default.
¶ 24. However, the facts in the case before us are markedly different. James paid no child support in the five years between the judgment of divorce in 2001 and the petition to modify the judgment of divorce filed in 2006, despite the significant income, approximately $54,000, he received as workers' compensation benefits. He was clearly in arrears and in default for lack of payment of child support prior to the receipt of any benefits by the three minor children and had unclean hands when he sought modification. It is noteworthy that James had paid no support for his four children, ever. Such was not the case in Mooneyham.
¶ 25. Likewise, I find Hammett inapplicable here. Hammett sought to have an arrearage of $4,308 placed in a trust account for his disabled child until the child reached the age of thirty-six. Hammett, 602 So.2d at 829. The supreme court affirmed the chancellor's refusal to allow the *798 money to be placed in trust. Id. The supreme court held that past-due support payments become vested when due and cannot be modified. Id. (citing Thurman v. Thurman, 559 So.2d 1014, 1017 (Miss. 1990)). The court recognized that the social security benefits received by a minor child are an alternative source of payment for child support, but that such receipt of benefits failed to alter the father's obligation to pay support and did not constitute a change of circumstances. Id.
¶ 26. Professor Bell also cites Bradley, for her proposition that child support arrearages can be satisfied by social security or disability benefit payments. In Bradley, the child's mother elected to receive social security benefits for the child based on the child's step-father, rather than the child's father. Bradley, 561 So.2d at 1035. Understandably, the mother elected to receive benefits based on the step-father's retirement, rather than the father's, because that benefit was significantly greater. Id. Regardless of whose retirement was used to calculate the social security benefits for the child, the benefit was more than sufficient to satisfy the natural father's monthly support obligation of $20 per week. Id.
¶ 27. The supreme court in Bradley merely recognized that the monthly child support obligation of the natural father had been satisfied, albeit by a social security benefit payment based on the step-father's retirement. Id. A review of the case indicates that the benefits were paid when child support was due and no true arrearages existed. Id. The mother simply elected to receive benefits for the child based on the step-father's retirement because of the obvious financial benefit to the child, despite the natural father's request that the mother apply for social security benefits based on his retirement. Id. The court in Bradley recognized that social security benefits received by the mother on behalf of the child under the Social Security Act are considered an alternative source of payment that satisfies the noncustodial parent's child support obligation. Id. Thus, although the child was receiving benefits based on her step-father's retirement, not her natural father's retirement, the monthly support obligation for the child was continuously met and no arrearages existed. Id. Bradley, therefore, does not stand for the proposition that child support arrearages can be satisfied through later payment of social security benefits. Again, the Bradley court, as other courts have, recognized that a credit or offset up to the amount of the support obligation due was proper. No past debt or arrearage was extinguished by the Bradley court's recognition that the child's natural father was entitled to credit for benefits paid based upon the step-father's retirement.
¶ 28. Child support payments become vested in the child when due, and once vested, cannot be modified or forgiven by the courts. Houck v. Ousterhout, 861 So.2d 1000, 1002(¶ 9) (Miss.2003). Each payment that is overdue becomes a judgment against the delinquent parent, to which the only defense is payment. Id. In this case, the chancellor recognized such with a judgment for arrearages. Furthermore, emancipation of one of the children does not preclude the noncustodial parent or the emancipated child from seeking payment of the debt from James. See id. I agree that the law allows social security benefits to serve as an alternate source of payment when the benefits are paid in the month the support is due. However, social security benefits cannot extinguish child support arrearages in default. See Keith, 982 So.2d at 1037 (¶¶ 13-14) (adopting holdings of other jurisdictions that social security benefits may be credited *799 against support obligations only for the period in which the benefits are currently due). Therefore, we find that the chancellor's decision was based on substantial evidence, complied with prior precedent of this Court, and was not an abuse of discretion. See Burnett, 792 So.2d at 1018-19 (¶ 6).
¶ 29. Furthermore, James came into the chancery court seeking modification of his child support obligations with unclean hands. This Court has explained the doctrine of unclean hands as follows:
The principle of "unclean hands" dictates that he who comes into equity must come with clean hands.... [T]he meaning of this maxim is to declare that no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by wilful inequity.... The court may apply this doctrine sua sponte where it is shown applicable.
Lane, 850 So.2d at 126(¶ 11) (internal citations and quotations omitted). Though Debbie did not affirmatively plead that James should be prevented from seeking modification because of the clean-hands doctrine, the chancellor could have grounded his decision to deny relief to James on the basis that he came before the court with unclean hands. The chancellor's judgment did indeed reflect the cleansing procedure. James's hands were cleansed by the entry of judgment against him for the arrearages. See id. at 127(¶ 14). The chancellor was then free to modify James's support obligation and allow the disability benefit payments received by the children prospectively to satisfy his future support obligations. See id. However, the chancellor could not have allowed James to satisfy the child support arrearages, which began to accrue in 2002, by using the lump-sum payments already made to the noncustodial parent four years later. Again, "[t]his Court cannot eviscerate the `bedrock' principle that child support arrearage [cannot] be forgiven." Id. at 127(¶ 14) (citing Williams v. Rembert, 654 So.2d 26, 29 (Miss.1995)). James is a prime example of why courts adhere to such a rule. James came to court in default with child support arrearages and consequently unclean hands. James should not benefit by being able to satisfy his child support debt with benefits paid to his children. This would encourage noncustodial parents to withhold support while awaiting some future benefit that might not ever arrive.
¶ 30. For the reasons stated above, we find that James's arguments lack merit. There is no evidence in the record that the chancellor abused his discretion or that his ruling was manifestly in error. Finding no error, we affirm the judgment of the chancery court.
¶ 31. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., AND ROBERTS, J., CONCUR. CHANDLER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.; CARLTON, J., JOINS IN PART. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., GRIFFIS AND ISHEE, JJ.
IRVING, J., CONCURRING:
¶ 32. I agree that the judgment against James Calvin Chapman in the amount of $14,850.85 in favor of Debbie Ward for *800 past-due child support payments should be affirmed even though, at the time of the judgment, Debbie had already received a lump-sum payment from the Social Security Administration for the benefit of the dependent children.[5] I believe that the judgment should be affirmed because James came into court with unclean hands and should not be granted any relief from his child support obligations that accrued prior to Debbie's receipt of the lump-sum social security payment.
¶ 33. In the judgment of divorce, entered March 12, 2002, nunc pro tunc July 9, 2001, the chancellor ordered James to pay twenty-four percent of his adjusted gross income, with said support due the first month he earns a paycheck. Technically, James never earned a paycheck within the literal meaning of the word. He did, however, receive gross income within the meaning of Mississippi Code Annotated, section 43-19-101 (Rev.2004), because he received substantial workers' compensation benefits. Section 43-19-101(3)(a) defines gross income to include workers' compensation benefits. There is no doubt, however, that James knew that he was supposed to pay twenty-four percent of his workers' compensation benefits to Debbie as child support for the parties' minor children.
¶ 34. James began receiving the workers' compensation benefits in October 2002. At that point, the court-ordered child support payments began to accrue. Yet, he paid nothing to Debbie for child support. It is clear from the record that at the time of the divorce, James was not working, presumably due to a work-related injury, and that the parties contemplated that James would soon begin receiving workers' compensation payments as a result of the injury.
¶ 35. In late 2005, James was found to be disabled by the Social Security Administration. As a result, he received a lump-sum payment. His minor children, who were the subjects of the child support judgment, also received lump-sum payments. Although it is not entirely clear in the record, it appears that these lump-sum payments for the children were not received until sometime in 2006 prior to James's filing his petition to modify the judgment of divorce. In the petition, he sought a setoff or credit against the children's lump-sum social security payments for his past-due child support payments that had vested and accrued back in 2002 when he received the workers' compensation payments.
¶ 36. The chancellor ruled that James was not entitled to a setoff against the lump-sum social security benefits because that was never the intent of the court. Specifically, the chancellor found that "[h]ad any of [the court-ordered child support payments] included social security payments or benefits the Court would not have ordered [James] to pay 24% to [Debbie]."
¶ 37. As I stated in Keith v. Purvis, 982 So.2d 1033, 1041(¶ 32) (Miss.Ct.App. 2008) (Irving J., concurring in part and dissenting in part), I believe that a custodial parent is not entitled to receive double child support payments, paid either directly by the noncustodial parent to the *801 custodial parent or by the Social Security Administration on behalf of the disabled noncustodial parent. However, I believe that, in this case, James should be required to pay the court-ordered child support payments from the workers' compensation benefits that he received and that Debbie should be allowed to keep that portion of the lump-sum payment that corresponds with the arrearage of James's child support obligations. My reasoning, as previously noted, is based on the fact that James came into court with unclean hands. Therefore, he should not have been allowed to invoke the power of the court to aid him until he had complied with his court-ordered child support obligation. I note that Debbie did not affirmatively plead the clean-hands doctrine in the court below. However, she did include a general prayer of relief in her response to James's petition to modify the original judgment of divorce. Since Debbie asked for general relief in her response, the chancellor could very well have grounded his decision to deny relief to James on the basis that he was in court with unclean hands. I believe it was appropriate to do so. Therefore, on that basis, I would affirm the chancellor's decision. In other words, I would find that James was required to pay the delinquent child support payments before his prayer for relief from future child support obligations could be considered.
¶ 38. Our facts here are remarkably similar to the facts in Keith except they are in the inverse. In Keith, Jackie Keith was ordered to pay child support to Deanna Purvis. Keith, 982 So.2d at 1035(¶ 3). He did so faithfully and timely. Id. at (¶ 4). He later was declared disabled by the Social Security Administration. Id. at (¶ 3). As a result of this disability, his dependent child that was the subject of the child support order received a lump-sum payment that covered the same period of time for which Keith had already paid support. Id. Although I dissented in Keith, this Court held that Keith was not entitled to a credit or setoff against the social security lump-sum payment for the child support payments that he had already paid. Id. at 1036(¶ 10). Part of the rationale for that holding was that the payments had vested and could not be reimbursed. Id. at 1039(¶ 21).
¶ 39. Keith timely paid his child support payments as they became due. In today's case, James did not. Had James paid his child support obligation when he received his workers' compensation payments and kept his child support payments current, I would find that he should be given credit for the lump-sum social security payment that Debbie later received. In my judgment, no principle of law enunciated in any of the cases cited by the majority in Keith or in this case prohibits a noncustodial parent from being credited with, or refunded, monthly dependent social security payments that are paid in a lump sum after the noncustodial parent has been adjudged disabled if all vested, court-ordered child support payments have been paid when the social security payments are received. The fact that vested child support payments cannot be forgiven is no impediment to giving a credit or refund because no vested child support payments are being forgiven. They already will have been paid. The issue to be resolved, under those circumstances, is what is the proper disposition or application of lump-sum social security payments that are received by a custodial parent for the benefit of a dependent child of a disabled social security recipient who is under a court order to pay child support but who is current with his court-ordered child support payments when the lump-sum payment from the Social Security Administration is received.
*802 ¶ 40. It is clear that if the social security payment had not been received in lump sum and instead had been received in monthly increments commencing at the same period of time that the monthly court-ordered child support obligation began, the payments could be substituted up to the amount of the court-ordered child support payment in lieu of the disabled social security recipient's monthly court-ordered child support payment. This being the case, I can see no logical reason why the lump-sum payment cannot be credited or refunded to the disabled recipient on the back-end, provided that all payments which were due on the front-end had been paid when the lump-sum payment was received.
¶ 41. In Keith, the message that is being unwittingly sent to obligators in child support orders is this: if you are a disabled social security recipient expecting a lump-sum social security payment on behalf of your dependent child, you may refuse, with impunity, to pay your court-ordered child support obligation pending receipt of the lump-sum social security payment. The flip side of the above message to a disabled social security recipient who struggles to keep his court-ordered child support payments current while waiting for the social security payments to begin is that you will be punished because you will not be given any credit for the child support payments that you made pending the commencement of the social security payments.
¶ 42. I fully embrace the jurisprudence of this state that obligators in child support orders are required to meet their obligation to make timely payments for the support of their minor children. However, when they have met that obligation and a lump-sum social security payment (representing the aggregate of payments owed from the time of a disabled recipient's application for benefits to the date of the commencement of monthly payments) is received and the monthly social security payments begin to flow to the recipient's dependent child, adjustments can be, and should be, made to reimburse the recipient for child support payments already made and to substitute the dependent's social security payments for the recipient's future child support payments, up to the amount of the recipient court-ordered support obligation. Resolving the problem in this manner satisfies two equally important interests: (1) the State's interest in assuring that minor dependents receive adequate and timely support from the parent charged with the responsibility of providing the support, and (2) the right of the child-support obligator to be treated in the same manner as other child-support obligators who are given credit for social security payments in lieu of child support payments but provided no lump-sum social security payments to their dependents.
¶ 43. For the reasons presented, I concur in the affirmance of the trial court's judgment.
CHANDLER, J., JOINS THIS OPINION. CARLTON, J., JOINS THIS OPINION IN PART.
BARNES, J., DISSENTING:
¶ 44. The majority affirms the chancery court's decision to deny James a credit against child support arrearages for the sums Debbie received from the Social Security Administration for lump-sum back payments to her minor children because of James's disability. Believing the majority opinion is contrary to Mooneyham v. Mooneyham, 420 So.2d 1072, 1074 (Miss.1982), I respectfully dissent, as I would reverse and render the chancellor's decision and grant James a credit for the social security benefits paid to the minor children based on his disability.
¶ 45. James and Debbie were divorced by an entry of judgment of divorce on *803 March 12, 2002, nunc pro tunc July 9, 2001. Debbie was awarded primary physical custody of the four children with the parties being awarded joint legal custody. At the time of the divorce, James was unemployed as a result of a work-related injury and was awaiting a hearing with the Mississippi Workers' Compensation Commission.
¶ 46. Under the judgment of divorce, James had the following obligation:
That the Husband shall pay child support 24% of his adjusted gross income with said support due the first month he earns a paycheck and continuing on the 1st day of each month until the minor children are emancipated and with the appropriate withholding order entered.
¶ 47. It is undisputed that James has been unemployed since the divorce and has not paid any child support. James received workers' compensation payments of $16,000, $12,165.92, and $26,250. It is based on these figures that the chancellor ordered James to pay 24% (along with interest) for back child support.
¶ 48. James was determined by the Social Security Administration to be totally disabled. As a result, Debbie received three lump-sum back payments from Social Security for the benefit of the three youngest children. It is unknown whether any benefits were paid for the fourth child who is no longer a minor. Debbie also receives a monthly benefit check from the Social Security Administration for the benefit of the three minor children.
¶ 49. James filed a "Petition to Find Defendant in Contempt and to Modify Judgment of Divorce" on March 9, 2006, in the Chancery Court of Madison County. James sought to have the judgment of divorce modified due to his disability to require that the social security benefits payable for the benefit of the minor children stand in lieu of the past and future child support payments.
¶ 50. Debbie filed an "Answer to Petition to Find Defendant in Contempt and to Modify Judgment of Divorce along with a Counterclaim for Citation of Contempt and Modification" on June 14, 2006. In the counterclaim, Debbie asked the court to find James in contempt for failure to pay child support of 24% of the workers' compensation benefits along with 24% of any monthly unemployment benefits and/or workers' compensation benefits.
¶ 51. On August 15, 2006, the court entered its "Opinion and Final Judgment" ordering James to pay Debbie $15,844.26 by September 11, 2006, and relieving James of any further child support obligation due to the receipt of social security benefits by the children based on James's disability. The court later amended its ruling to correct a calculation error and ordered James to pay $14,840.85 as child support from the workers' compensation benefits he received.
¶ 52. James argues that he should have been given credit against any arrearage for child support for the Social Security Administration's award of benefits to the minor children. As this Court recently held in Keith v. Purvis, 982 So.2d 1033, 1036(¶ 8) (Miss.Ct.App.2008) (citations omitted), "Mississippi law is clear that social security benefits received by a minor child based on a non-custodial parent's retirement or disability are an alternate source of satisfying court-ordered child support obligations and are credited toward the discharge of those obligations."
¶ 53. While my research indicates that no authority is exactly on point with the facts of this case, I find Mooneyham controlling. In Mooneyham, the Mississippi Supreme Court, after reviewing the decisions of eight other jurisdictions, stated:
Where the father who has been ordered to make child support payments becomes totally and permanently disabled, *804 and unconditional [s]ocial [s]ecurity payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under the divorce decree.
Mooneyham, 420 So.2d at 1074 (quoting Andler v. Andler, 217 Kan. 538, 544, 538 P.2d 649, 654 (1975)). The supreme court determined that the chancery court erred in awarding a lump-sum decree against the father for back child support payments where the Social Security Administration had made payments under his prior earnings for the benefit of the minor. Id. at 1074.
¶ 54. In 1992, the supreme court again looked at Mooneyham and stated: "We have held that SSI benefits received by a minor child based on his parent's disability or retirement are considered an alternative source of payment which should be credited toward satisfaction of child support obligations." Hammett v. Woods, 602 So.2d 825, 828 (Miss.1992) (citing Bradley v. Holmes, 561 So.2d 1034, 1035 (Miss. 1990); Mooneyham, 420 So.2d at 1073-74). In her treatise on family law, Professor Deborah H. Bell also recognizes that "[c]hild support arrearages are offset by social security or disability benefits paid as a result of the payor's employment." Deborah Bell, Bell on Mississippi Family Law, 338 (Nautilus Publishing Co.2006) (citing Hammett, 602 So.2d 825; Mooneyham, 420 So.2d 1072).
¶ 55. The chancery court in its opinion and amended opinion cited Mooneyham and Bradley and stated that the "Mississippi Supreme Court has held that payment of social security benefits for the benefit of the minor children under the Social Security Act are considered an alternative source of payment that satisfies child support and should be credited toward that obligation." The court, however, did not recognize that this credit also applies to past-due child support. Under the cases cited, I find this to be in error. The majority states that Mooneyham is not a true arrearage case. I disagree. The only reason the appellant father did not have child support arrearages is because in Mooneyham the supreme court gave retroactive credit to the father for the social security payments when the appellee mother began receiving them directly. In Keith, this Court cited Mooneyham for the proposition that "the Mississippi Supreme Court has impliedly held that crediting social security benefits against support arrearage does not constitute an impermissible retroactive modification of support." Keith, 982 So.2d at 1039 n. 3 (emphasis added). I find no distinction between the case at bar and Mooneyham. Accordingly, I would reverse and render the chancellor's decision, and grant James a credit to his child support arrearages for his social security payments made directly to his children, as the Mississippi Supreme Court did in Mooneyham.
KING, C.J., GRIFFIS AND ISHEE, JJ., JOIN THIS OPINION.
NOTES
[1] The oldest child was no longer a minor at the time the social security benefits were paid. The chancellor's amended order reflects that the oldest child did not receive any social security benefits. Hence, receipt by the other three children of any social security benefits would not have impacted any arrearages owed to the oldest child.
[2] See Lane v. Lane, 850 So.2d 122, 126(¶ 11) (Miss.Ct.App.2002), discussed later in this opinion, for an explanation of the clean-hands doctrine and modification.
[3] There was also a dispute between the parties as to visitation, but this is not an issue before us on appeal.
[4] In Keith, there was no arrearage. In this case, James clearly is in default and arrears. We seek here only to address the arrearages issue before us and do not seek to re-hash Keith. In this case, James came to court with indisputable unclean hands and failed to present evidence as to when the social security benefits were received. The benefits are equitably deemed a benefit to the child. James could not get a modification of his child support obligations without a cleansing judgment and social security benefits do not satisfy arrearages.
[5] The lump-sum payment represented the aggregate of monthly dependent payments retroactive to the date of James's application for disability status. This lump-sum payment was not received until sometime after February 2006, but it was enough to cover the aggregate of dependent monthly payments that had become due under an order for child support entered by the court on March 12, 2002, nunc pro tunc July 9, 2001. Prior to receipt of the lump-sum payment, James had not paid any child support, even though he had received substantial workers' compensation benefits in October 2002.