TOWN OF CRENSHAW *v.* PANOLA COUNTY.

[76 South. 741, In Banc.]

1. HIGHWAYS. *Taxation. Distribution by counties. Code* 1906, *sections* 4443-4469.

   The statutory scheme, Code 1906, section 4443, relating to the levy of road taxes by a board of county supervisors and section 4469, relating to the road fund, contemplates that the board of supervisors shall supervise the distribution of the funds otherwise there would be no record thereof.

2. LIMITATION OF ACTIONS. *Municipal corporations. Constitutional provisions.*

   Under section 104, of our Constitution, so providing, the statute of limitations does not run against municipal corporations and this is true although the suit be by a town against a county.

3. HIGHWAYS. *Road tax. Liability to town. Amount.*

   Under section 4443, Code 1906, authorizing a county to levy a road tax on all the taxable property of the county and section 4469, providing for the distribution of the road fund, a county collecting a road tax on property within the corporate limits of a town and which had not spent any of the money on working the streets of the town must pay over to the town one half of the road taxes collected therein.

4. COUNTIES. *Judgment against. Enforcement.*

   The mere authorization of suit against a county does not imply necessarily, a means of enforcement of a judgment therein obtained. When a judgment is rendered against a county, it is the duty of the board of supervisors to apply such funds in the treasury of the county as are not otherwise appropriated to its payment, or if there are no funds, and they possess the requisite power, it is their duty to levy a tax for that purpose but if they have no funds, and the power to levy the tax has not been delegated to them, such tax cannot be levied without express legislative authority.

APPEAL from the circuit court of Panola county.

HON. E. D. DINKINS, Judge.

Suit by the Town of Chenshaw against Panola County. From a judgment of the circuit court reversing a judg-

ment of a justice of the peace in favor of plaintiff and dismissing the case, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Shands & Montgomery,* for appellant.

We respectfully contend that the statute of limitations of six years did not apply in this case, and that the claim was not barred by reason of any limitation fixed by statute. Section 104 of the Mississippi Constitution reads as follows: ''Statutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporation thereof.''

Upon a proper construction of this section of the Constitution, in my judgment, the decision in this case rests. Words in the Constitution are to be taken in their plain and obvious sense, and when this sense is clear, no resort can be had to construction. *Smith* v. *Halfacre,* 6 Howard, 582; *Brien* v. *Williamson,* 7 Howard, 14.

It seems to me that this provision of the Constitution is so plain as to eliminate from consideration the question of the applicability of the statute of limitations in this case. The Constitution says in the plainest, simplest language, that the statute of limitations in civil causes shall not run against a municipality. No amount of argument or discussion could add anything which would make the meaning of this clause in the Constitution clearer.

Section 3096, Code 1906, provides that statutes of limitation in civil causes shall not run against the state or any subdivision or municipal corporation thereof; but all such statutes shall run in favor of the state, the counties and the municipal corporations therein.''

The Constitution is of course the supreme law of the state of Mississippi and where a conflict exists between a provision in the Constitution and a statute, the constitutional provision controls. The court in construing

a statute, will, if possible, give to it such a construction as will render it constitutional.

If the court in this case construes the clause in section 3096, "but all such statutes shall run in favor of the state, the counties, and the municipal corporations therein," to mean that the county may successfully plead the statute of limitations against the town, then this statute is repugnant to section 104 of the Constitution, because the Constitution clearly provides that the statute of limitation shall not run against a municipality, and make this provision without qualification.

But section 104 of the Constitution controls this question in this case, and we rest the decision of this question upon a construction of its plain, simple announcement, that statute of limitation shall not run in civil causes against a municipality. We can add nothing by way of argument which could make the provision plainer.

The court will view the facts of this case from a practical view point. The county, through its tax collector, was the only legally constituted authority for the collection of this tax; the town could not collect it. It was the duty of the county to distribute or divide this road fund with the town immediately upon receipt thereof, under sections 4443 and 4449 of the Code of 1906. Immediately upon the collection of the tax, the county became the debtor of the town to the extent of one-half of the road tax so collected. It is always the duty of the debtor to seek the creditor and pay him, rather than to compel the creditor to seek the debtor and demand payment of the debt.

Whether the money was turned into the road fund and expended in the working of the various roads of the county, or not, was a matter over which the town had no control whotever. The county collected the money, and was legally obligated to pay one-half thereof over to the town; the town had no authority to direct the appropriation of the fund in any manner; and so far as the town

was concerned, the county had the right to make whatever disposition it desired to make of the fund. But the fact that the county deposited the money so collected to any particular county fund, and used it for any particular purpose, could not possibly operate as a payment or discharge of its legal liability to the town for one-half of the money collected and due to the town.

It is not shown here that the town of Crenshaw had any knowledge whatever as to what the county did with the money so collected. The fact that the county used the money in working of the various county roads, outside the corporate limits of the town of Crenshaw, did not discharge its obligation to the town to pay to it the amount legally due to it. The county was legally obligated to pay into the treasury of the town for account of the town street fund one-half the taxes collected on the taxable property within its corporate limits for road purposes and when the tax was collected by the county, it become the debtor of the town to that extent.

I respectfully submit that section 104 of the Constitution prohibits the running of the statute of limitations against the town in this case; and that the learned trial judge was in error in deciding this case in favor of the county. I submit that the judgment of the lower court should be reversed, and judgment entered in this court for the sum demanded, less commissions due to sheriff for collection, with all lawful interest and costs.

*L. L. Pearson* and *John Kyle,* for appellee.

Two defenses were interposed on the trial of this case in the lower court, to wit: the statute of limitations and special matter set up under the plea of general issue.

As to the first plea of the statue of limitations: It is urged that this plea cannot be sustained because of the provision of section 104 of the Constitution. It is the contention of the county that this section of the Con-

stitution was never intended to operate as an inhibition against a department of the government pleading the statute against another department of government, but was intended solely to prohibit the legislature from authorizing private parties to plead statutes of limitations to defeat a right of action vested in the government. We have been unable to find any authority on this point, and so far as our investigation has gone, no case involving this point has ever been decided in this or any other state. But in support of this plea we refer to the very clear opinion of the circuit judge which has been made a part of the record on this appeal.

The defense made under the plea of the general issue with notice must unquestionably be sustained. It is our opinion that the tax collector, in making his settlement, should pay over to the municipality directly its half of the *ad valorem* road taxes collected by him. If he does not do this, however, the money, so long as it remains in the county treasury, may be recovered from the county authorities. But if the money is not claimed while it is in the custody of the county authorities and no demand is made for it while it is in fund, then the municipality is clearly estopped by their own conduct from coming into court years afterwards and undertaking to establish a claim against the general county fund for the amount of road money which they could have demanded and expended under the direction of the municipal authorities for working their streets, but which they allowed to remain in the county road fund and be expended by an old board of supervisors years before, the agreed statement of facts in this case show that no part of the money received for *ad valorem* road taxes for the years 1907 and 1908 was ever placed to the credit of the general fund of the county and that at the time demand was made for the amount herein sued for, not a dollar of it was in fund, but all of it had been long since expended for working roads in the various parts of the

country including those leading into the town of Crenshaw.

The statute has provided two governing bodies for the disbursement of the *ad valorem* road tax, to wit, the county board of supervisors and the board of aldermen of the municipality. The fund created by the levying of this special road tax is a special fund to be used for the purposes which the statute defines and for no other purposes. One of the governing bodies charged with the duty of expending the money has stood idly by and allowed the other governing body to expend it all, not for any illegal purposes but for the purpose for which the fund was created; this being true the municipality of Crenshaw cannot at this late date come in and undertake to assert a general claim against the county.

The case made on this appeal is one of first impression in this court and the amount involved herein is relatively small, but the decision of the court on this appeal is a great consequence, because of other cases involving the same legal points but much larger amounts of money are now pending in the various counties of the state. As pointed out by the learned counsel for the appellant, the leading authorities I wish to call the court's attention to are two Florida cases, the first of which was referred to specifically in the brief for the appellants. The policy of the law of that state and the wording of the statutes in that state are in effect identical with our own. In the case of the *City of Sanford* v. *Orange County,* 45 So. 479, the plea and defense herein made was upheld by the court in language most convincing and while the word laches was used in the opinion of the court, the real defense was an estoppel against making demand under the circumstances. But counsel for appellant in their brief have pointed out several reasons why they claim the decision in that case cannot control here. They argue that the case above cited was an equity case and not a law case and that the court rested its decision on the fact that the city was in laches and that laches cannot be

maintained as a defense in a law court. As a conclusive answer to these arguments I wish to cite the case just decided by the supreme court of Florida, *Pippin, et al., County Commissioners,* v. *State, ex rel. Town of Blountstown,* 74 So. 653. This latter case shows that the defense was sustained in a law court and that the city was estopped to claim the funds under facts identical with those we have before us, and the court went so far as to state that the payment of the claim therein sued for would be a violation of the law.

Now, in conclusion, let us notice especiall the language used in the statute upon which the claim herein sued upon is founded. Section 4443 of the Code provides that: "The taxes so collected on property within a municipality, the streets of which are worked at the expense of the municipal treasury, or worked by municipal authority, shall be equally divided between the county road funds and the municipal street fund." Section 4469 provides as follows: "One-half of the *ad valorem* tax collected on property within a municipality shall be paid over to the treasurer thereof, in cases where the streets are worked at the expense of the municipal treasury, or worked by municipal authority, and all other *ad valorem* taxes collected shall be paid to the county treasurer, and used by the board of supervisors as a general road fund within such portion of the county as is worked by contract." Thus we see that section 4443 provides that the taxes thus collected on property within the municipality shall be equally divided between the county road funds and the municipal street fund. The statute does not state who shall make the division, but the natural deduction is that it should be thus divided by the authority who collects it, to wit, the tax collector. This idea is strengthened by the language employed in section 4469. If this money is all paid into the county road fund, as is, probably the universal custom, we admit that the municipality upon timely demand made while the portion to which is entitled is in fund can have its part paid over to the munici-

pal treasury. But the statutes above quoted do not confer a general creditor's right upon the municipality against the county, which can be enforced against the general funds of the county. The right is limited exclusively in this case to the one-half of the *ad valorem* road taxes collected within the municipality during the years 1907 and 1908. It is a right to a specific fund, and that right has become worthless, because the municipal authorities stood idly by and allowed the fund to be expended, rightfully or wrongfully, it matters not which, by the old board of supervisors.

The judgment of the lower court holding that the municipality was estopped to come in and undertake to establish a general claim against the general funds of the county. Under the facts developed, this case is correct, and that judgment should be affirmed.

COOK, P. J., delivered the opinion of the court.

This suit was begun in the court of a justice of the peace of Panola county. The cause of action is thus stated:

Town of Crenshaw v. Panola County.

Panola County, Mississippi, Dr., to the Town of Crenshaw, a Municipality.

To one-half of one-mill road tax collected on property within the corporate limits of said town of Crenshaw for the year 1907...................$102.21

To one-half of one-mill road tax collected on property within the corporate limits of said town of Crenshaw for the year 1908.................. 96.49

---

$198.70

Judgment was rendered by the justice of the peace in favor of the plaintiff, the town of Crenshaw, and the defendant, Panola county, appealed to the circuit court, in which court the judment of the justice of the peace

was reversed, and the case dismissed. From this judgment the town of Crenshaw has appealed to this court.

The case was submitted to the learned circuit judge upon an agreed statement of facts as follows:

"In this case it is agreed that the following constitutes an agreed statement of facts:

"That during all the years 1907 and 1908 the town of Crenshaw was a duly constituted municipal corporation, situated in said county and state of Mississippi, and that during all of said years 1907 and 1908 the streets situated within the corporate limits of said county were worked wholly at the expense of the treasury of said municipality and by the municipal authority of said town, and that the county of Panola did not work on any of the streets of said town, nor paid any part of the expense of working the streets situated within the corporate limits of the said town, during either of the said years.

"That the board of supervisors of Panola county, acting under the authority of section 4443 and other similar provisions of the Mississippi Code of 1906, levied a one-mill *ad valorem* tax upon all taxable property in said county of Panola, including the taxable property situated within the corporate limits of said town of Crenshaw, for each of said years 1907 and 1908, and the tax collector of said county of Panola collected said one-mill *ad valorem* tax upon all of the taxable property situated within the corporate limits of said town of Crenshaw for each of the said years 1907 and 1908, the gross amount of said one-mill tax levied and collected for the years 1907 being two hundred and four dollars and forty-two cents, and the gross amount of said taxes collected for the year 1908 being one hundred and ninety-two dollars and ninety-eight cents; that said taxes was not divided between the county road fund and the municipal street fund of said town of Crenshaw, and no part thereof was ever paid over to the said town of Crenshaw, and no part thereof ever received by it.

"That all of said above-described taxes for each of the years of 1907 and 1908, less the commission allowed to said tax collector, which on the amount herein sued for is agreed to have been six dollars and fifty cents, were by the tax collectors of said county of Panola turned over to the county treasurer and placed to the credit of the separate road fund of said county along with the other *ad valorem* road tax levied and collected as above, and were by the proper officers of said county expended for the working of the public roads of said county throughout said county of Panola, including the public roads leading to and about the said town of Crenshaw, but not including any roads or streets within the corporate limits of said town of Crenshaw; that said amounts have long since been expended by said county of Panola, and that no demand was ever made by the said town of Crenshaw upon the said count for the payment over to it of any part of said fund until sometime in the year 1915; that no part of said funds is now in the county treasury, and no part of said funds was in the county treasury at the time of the presentation of the claim by the said town of Crenshaw to the said county for payment; that none of the amounts sued for were ever placed to the credit of the general funds of said county of Panola.

"That the said town of Crenshaw duly presented a claim in writing to the board of supervisors of said county of Panola for said amounts sued for, which claim was by the said board of supervisors declined; all of which was done before suit was instituted.

"This statement and agreement of facts shall not prejudice in any way the right of defendant county to object to the jurisdiction of the court, or to ask that same be transferred to the chancery court."

We here copy the opinion of the judge, viz.:

"In the decision of this case there are two important questions to be considered, i. e.: (1) Whether or not section 104, Constitution of Mississippi, applies to suits between a county and a municipality, a county and the

state, or where the interest of any two of them may conflict; or (2) whether or not a municipality, entitled to a moiety of road taxes collected by the provisions of sections 4443 and 4469, Code of 1906, may, without protest, see the entire tax paid over to the county treasurer, and by him credited to the separate road fund of the county, and all of it expended by the proper authorities of the county in working the county roads, including those of the particular district in which the municipality is situated, and even upon those roads leading into the municipality, and then, after the lapse of years, sue for and recover of the county its pro rata share thereof.

"Under the Code section referred to, I think the tax collector should account directly to the municipality whose streets are worked at the expense of the municipal treasury for their part of the fund collected, and thus save any conflict or confusion that might result from payment thereof into the county road fund, against which, under our present deplorable credit system, warrants might be outstanding that would consume the entire amount; but the question is not involved here.

"This suit is for the taxes collected for the years 1907 and 1908, the collection, amount, and appropriation of which to the county roads is agreed upon, and that no demand whatever was made therefor until some time in the year 1915, when, the same being rejected by the board of supervisors, the town of Crenshaw sued the county of Panola before a justice of the peace, where a plea of the six-year statute of limitations and the general issue, with notice, was interposed, and from whose decision an appeal was taken to this court.

"I have made diligent search for some authority to assist me in determining what, if any, application section 104 or the Constitution and section 3096, Code of 1906, should have to a suit by a municipality against a county, but have not been able to find anything bearing, even remotely, upon the question, but it is in my opinion

that section 104 of the Constitution was intended solely to prohibit the legislature from authorizing the statute of limitations to run against the state, counties, and municipalities so far as only individuals and private corporations were concerned, and that there was no purpose to deal with the question where a conflict between the beneficiaries of the provision might be involved.

"Taking this view of the section 104, and recognziing the principle that statutes of limitations do not run against the state or county unless expressly so intended as to them, and that general statutes of limitation do run against municipalities, I conclude that the plaintiff here, the town of Crenshaw, is barred by the six-year statute.

"Considering the second question raised by this record, my attention is called to the decision of the supreme court of this state in *Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703, but I am not convinced that it has any application at all to the facts in this case. There it is not shown that the municipality had not protested against the payment of the taxes into the general road fund, or against expenditure thereof, or that the amount was not then in the county treasury, or that there had been any delay in making the demand, all of which is perfectly clear here.

"To permit a municipality. even in ignorance of its rights, being entitled to one-half of the *ad valorem* road taxes collected under the provisions of the statutes referred to, to stand quietly by and see the county authorities receive and expend the whole fund upon roads, some of which lead into the town, and then, after the lapse of six years, during which it may be that the very expenditure had contributed as much to its upbuilding as if made upon its streets, to maintain a suit against the county for such taxes, is equivalent to approving the demand for the return or value of a thing given away that had been consumed in the presence of the giver and

is opposed to the rule, as expressed in 37 Cyc. 1178, prohibiting the recovery of taxes voluntarily paid.

"My attention is called to the case of *City of Sanford* v. *Orange County,* 54 Fla. 577, 45 So. 479, which, so far as the facts are concerned, is hardly distinguishable from the case presented here, and in which it was held that no recovery could be had against the county which had received and expended the fund. The decision there, however, is grounded upon the laches of the city in not protesting against the use of the funds and in making no demands for it until after it had been expended, and the suggestion is made that, if the money had been in fund the proper remedy was *mandamus.*

"I cannot accept the grounds upon which the Florida court based its decision, i. e., laches, as our statutes of limitation must alone be looked to in such cases, but without any statute of limitation (which in my opinion we have that it applies in this case) I think that the plaintiff is estopped by its conduct now to assert any claim to the fund. Let the judgment be for the defendant."

It will be observed that the trial judge was of opinion that sections 4443 and 4469 contemplated that the tax collector should account directly with the municipality, but he also says that this question was not involved. Counsel, however, make the point that the statutes put the duty upon the tax collector, and that the county cannot be held liable for the mistakes of the collectors.

It is our opinion that the statutory scheme contemplates that the board of supervisors shall supervise the distribution of the funds; otherwise there would be no record thereof. Section 104 of our Constitution expressly provides that the statutes of limitation shall not run against municipal corporations. The plaintiff in this case is a municipal corporation, and we can find nothing in the Constitution to warrant the exception sought to be made in this case. The county could, of

course, invoke the statute against a natural person or private corporation, but the Constitution closes the door when the plaintiff is a municipal corporation.

The attorney for the county cites *Pippin et al.* v. *Town of Blountstown,* decided by the supreme court of Florida, and reported in 74 So. 653, as conclusive against the municipality. We think the opinion in that case is entirely sound, but it will be noted that the town in that case instituted a proceeding in *mandamus,* while the case at bar is not a *mandamus* proceeding, but is a case to recover money from the county which it had wrongfully received and expended. In the *Florida Case, supra,* the county manifestly could not pay over the money received by it, because it had been expended. It would, of course, be a vain thing to order the county to pay over to the town certain money which it did not possess.

In the consideration of this case, it must be borne in mind that this is not an action by which it is sought to require the county to pay the claim, but it is an action to review the action of the board of supervisors rejecting the claim. This court, in *Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703, expressly decided the precise question presented by this appeal. In other words, it was there decided that the county must pay over to the city one-half of the road taxes collected by the county. That was a suit to establish the liability of the county, and so is the present suit. The case cited was not a *mandamus* proceeding to require the county to pay, and neither is this a suit to require payment; it is merely a suit to establish liability. When it comes to collection, an entirely new question will be presented. The question will then be: Will the court issue its mandate commanding a payment of the judgment?

In *Holly Springs* v. *Marshall County, supra,* the court rendered its judgment for the money received by the

county which, by the statute, belonged to the city; and the same judgment is demanded in this case.

The rule here considered is thus stated in Ruling Case Laws, vol. 7, p. 967:

"The mere authorization of suit against a county does not imply, necessarily, a means of enforcement of a judgment therein obtained. When a judgment is rendered against a county, it is the duty of the commissioners to apply such funds in the treasury of the county as are not otherwise appropriated to its payment, or if there are no funds, and they possess the requisite power, it is their duty to levy a tax for that purpose, but if they have no funds, and the power to levy the tax has not been delegated to them, such tax cannot be levied without express legislative authority."

The town in this case should have had judgment; the facts are undisputed. When it comes to enforcing payment, we will consider the question argued below and here. This question is not now before us.

*Reversed, and judgment here.*


SMITH, C. J. (dissenting.)

I am of opinion: First, that a county has no power to divert, either directly or indirectly, money collected by taxation for general county purposes to the building and maintenance of public roads; second, since it appears from the declaration that road funds here sued for have been spent by the county, it can only pay the judgment here rendered by diverting to that fund money collected by taxation for general county purposes; thereby doing indirectly what I am clearly of the opinion it could not have done directly. From which it follows that I am of the opinion, third, that no judgment should be rendered against the county herein, and that the judgment of the county court below should be affirmed.

It does not appear from the agreed statement of facts on which the case of *Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703, was tried whether or not the county at the time of the institution of the suit still had on hand the city's claimed proportion of the road tax collected by the county, so that the question here under consideration not only did not then arise and was not referred to in the opinion of the court, but, on the contrary, it was expressly eliminated by the agreement of counsel that the amount sued for "should be paid to the city, unless the election by the county to come under the provisions of chapter 150 of the Laws of 1910 repealed sections 6 and 7 of chapter 119 of the Laws of 1910 and section 4469 of the Code of 1906." That case therefore is no authority for the holding of the majority here.