# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00499-SCT

*WAYNE COUNTY SCHOOL DISTRICT*

*v.*

*QUITMAN SCHOOL DISTRICT AND THE SCHOOL BOARD OF THE QUITMAN SCHOOL DISTRICT v. KEITH CLAY, BEN GRAVES, LEAH PARSON, FRED ANDREWS, CHARLES CHAPMAN, JIMMY D. BARNETT, AND TERRY GRAHAM*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/30/2020 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| TRIAL COURT ATTORNEYS: | MORAN M. POPE, III |
| | JOHN G. COMPTON |
| | RICHARD D. NORTON |
| | SHELDON G. ALSTON |
| | KRISTOPHER ALAN POWELL |
| | KATHRYN D. CLAY |
| | TERRY L. CAVES |
| | RISHER GRANTHAM CAVES |
| | ROBERT H. COMPTON |
| | MARCUS DOUGLAS EVANS |
| | WILLIAM A. WHITEHEAD, JR. |
| | WATTS CASPER UELTSCHEY |
| | KAREN ELIZABETH HOWELL |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM A. WHITEHEAD, JR. |
| | WATTS CASPER UELTSCHEY |
| | J. SHANNON CLARK |
| | MARCUS DOUGLAS EVANS |
| | KAREN ELIZABETH HOWELL |
| ATTORNEYS FOR APPELLEES: | JOHN G. COMPTON |
| | ROBERT H. COMPTON |
| | TERRY L. CAVES |
| | RISHER GRANTHAM CAVES |
| NATURE OF THE CASE: | CIVIL - OTHER |

DISPOSITION:    ON DIRECT APPEAL: REVERSED AND
                RENDERED.  ON CROSS-APPEAL:
                AFFIRMED - 07/28/2022

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    Before the Court is a dispute between Quitman School District and Wayne County School District as to whether the disbursement of past revenues generated from sixteenth section land located in townships shared by the two school districts and received by Wayne County School District should be shared when Quitman School District failed to meet a one year statutory prescription.

**FACTS**

¶2.    By design, the sixteenth section of each township in Mississippi was set aside and granted to the state to provide for the public education of the children residing in the township.  The primary trustee for all sixteenth sections is the state.  Acting through the Legislature, the state enacted legislation as to how the lands would be managed.  Title 29, chapter 3, of the Mississippi Code sets forth the terms of the school trust.  Section 29-3-1(1) provides:

> Sixteenth section school lands, or lands held in lieu thereof, constitute property held in trust for the benefit of the public schools and must be treated as such. The board of education under the general supervision of the state land commissioner [now, the Secretary of State, Miss. Code Ann. § 29-3-2 (Rev. 2020)] shall have control and jurisdiction of said school trust lands and of all funds arising from any disposition thereof heretofore or hereafter made. It shall be the duty of the board of education to manage the school trust lands and all funds arising therefrom as trust property.

2

Miss. Code Ann. § 29-3-1(1) (Rev. 2020). "Board of Education" is defined as "that school board of the school district in whose present jurisdiction (I) is situated a sixteenth section of land, or (ii) was originally situated a sixteenth section of land for which for which land has been granted in lieu thereof." Mississippi. Code Ann. § 29-3-1.1(a) (Rev. 2020).

¶3.     Mississippi Code Section 29-3-119(2) requires that when more than one school district is in a township, the "available funds" will be shared in proportion to the number of students residing and enrolled in that portion of the township within each school district as determined by annual lists of educable children made and provided in accordance with Mississippi Code Section 29-3-121 (Rev. 2020).  Mississippi Code Section 29-3-119(2) (Rev. 2020) provides: "The school district having jurisdiction and control of the sixteenth section . . . lands in the township (the 'custodial school district') shall pay to each other school district lying wholly or partly in the township which is entitled to a part of the township funds the district's *pro rata* share of the *available township funds*, as determined from the lists of children prepared pursuant to Section 29-3-121, promptly after collecting such funds."  Miss. Code Ann. § 29-3-119(4) (Rev. 2020) (emphasis added).  "Any district entitled to such funds which is not paid promptly may assert a claim against the custodial school district for its share of the funds *not later than* twelve (12) months from the end of the calendar year in which the custodial school district collected such funds." *Id*. (emphasis added).

¶4.     Section 29-3-121 calls for the list of educable children to be made and filed with the custodial district on or before December 31 of each year and provides that the lists shall be used by the superintendent of the custodial district for the division of available funds "during

3

the ensuing calendar year[.]" Miss. Code Ann. § 29-3-121. The statute specifically states that "[a]ny school district failing to timely provide the list to the superintendent of the custodial school district shall forfeit its right to such funds" unless the school boards of the districts execute a written agreement to the contrary. *Id*.

¶5.     To emphasize the requirement that the noncustodial district must timely submit the student list before it is entitled to receive any available funds from the custodial district, Mississippi Code Section 29-3-123 makes it unlawful for any township funds to be "paid over to school districts . . . *until* lists of the children residing in each district or part of district within such township who are enrolled in the schools thereof have been made . . . ." Miss. Code Ann. § 29-3-123 (Rev. 2020) (emphasis added). "Such lists shall be made annually before any payment of the *expendable* sixteenth section revenues shall be made to school districts as provided in Sections 29-3-115 through 29-3-123." *Id.* (emphasis added).

¶6.     Quitman School District and Wayne County School District share Township 10 North, Range 6 West ("10-6"), Township 10 North, Range 7 West ("10-7"), Township 10 North, Range 8 West ("10-8"), and Township 10 North, Range 9 West ("10-9"), with all four townships located along the boundary line between Wayne County and Clarke County. The sixteenth sections in townships 10-6 and 10-7 are entirely in the Wayne County School District, and the sixteenth section in township 10-9 is entirely in the Quitman School District. *Id*. The sixteenth section in township 10-8 is divided by the Clarke-Wayne boundary line.

¶7.     In 1998, in response to a report by the state auditor's office finding that school districts in Mississippi were not making annual lists of educable children by township and

4

were not properly allocating sixteenth section land funds, Quitman School District and Wayne County School District began exchanging lists of students residing within shared townships. After the exchange of lists began, Wayne County School District shared on a pro rata basis with Quitman School District the available funds derived from shared townships every year from that point forward, with the exception of the expendable sixteenth section revenue from the royalties produced by a single oil and gas well on 10-7, a sixteenth section located entirely within the Wayne County School District.

¶8. The present dispute began when Quitman School District discovered that oil and gas production was ongoing on 10-7 without funds related to that production being included in the *pro rata* distribution.

¶9. In June 2011, when the issue was brought to Wayne County School District, Wayne County School District requested an attorney general opinion regarding how far back in time Wayne County School District would have to go to pay Quitman School District in full for unpaid shared revenues. The attorney general's office stated that Section 29-3-119 established a one year statute of limitations for any claim by Quitman School District for unpaid shared revenues or whether a statute of limitations applied. Miss. Att'y Gen. Op., No. 2011-00443, 2011 WL 6813973, *Dickerson*, (Nov. 4, 2011), at *2. As a result, Wayne County School District paid Quitman School District a *pro rata* share of sixteenth section revenue related to the oil and gas production on 10-7 from January 1, 2010, forward, including a pro rata portion of royalties derived from oil and gas production.

¶10. The procedural history of the case *sub judice* began in 2011, when Quitman School District filed suit against Wayne County School District seeking, among other things, an allocation of available funds from July 1, 1978, through September 1998—a period of time before the districts prepared or exchanged lists of educable children—as well as an allocation of revenues, including royalty payments, from oil and gas production in 10-7 for all years prior to 2010. On August 27, 2012, Wayne County School District filed a motion to dismiss Quitman School District's amended complaint due to the requirement of Section 29-3-119(4) that a school district must "assert a claim against the custodial school district for its share of the funds not later than twelve (12) months from the end of the calendar year in which the custodial school district collected such funds." On December 17, 2012, Wayne County School District filed a motion for partial summary judgment, contending that under Section 29-3-119(4), Wayne County School District was entitled to partial summary judgment on any claim for funds asserted by Quitman School District concerning or relating to any sixteenth section funds collected by Wayne County School District prior to January 1, 2010. In the alternative, Wayne County School District argued that Section 29-3-119(4) is not a statute of limitations but rather a legislative pronouncement governing the method and procedure for allocation of shared revenue. In response, Quitman School District filed a cross-motion for partial summary judgment, arguing, in part, that the alleged one-year statute of limitations within Section 29-3-119 conflicts with the Mississippi Constitution and Mississippi Code Section 15-1-51 (Rev. 2019) and is, therefore, unconstitutional.

¶11.    On April 2, 2013, the chancery court issued a letter finding that *Jones County School District v. Department of Revenue*, 111 So. 3d 588 (Miss. 2013), "seems to answer the question about the statute of limitations issue" but that "[it will be incumbent upon [Quitman School District] to demonstrate to the Court that the lists] of educable children, pursuant to Miss. Code Ann. § 29-3-123, were in fact submitted to [Wayne County School District] for each year [Quitman School District] asserts nonpayment by [Wayne County School District] to [Quitman School District]." The Court stated that "[should [Quitman School District] be unable to show evidence of the submission of the list of educable children for each year claimed, [Wayne County School District] will be prohibited by law from making any payment to [Quitman School District] until such time as the lists of educable children have been provided."

¶12.    In October 2015, Quitman School District filed with the superintendent of education of Wayne County School District recreated historical lists (meaning not previously existing lists) of educable children residing within the shared townships for each school year from 1983 through 1998, and on May 5, 2016, Quitman School District forwarded its version of revised recreated historical lists.

¶13.    On January 24, 2017, the chancery court entered an order holding that: (1) the statute of limitations was no defense to the claims of Quitman School District, (2) available funds included both principal funds and expendable funds as those terms are defined in Sections 29-3-113 and-115, respectively; and (3) Quitman School District was entitled to a judgment against Wayne County School District on the issue of liability for its proportionate share of

7

all available sixteenth section funds received and administered by Wayne County School District during the time periods for which lists of educable children have now been presented by Quitman School District, if any. We affirm the determinations of the trial court raised on cross-appeal, granting Defendants' Motion to Amend Pleadings to file a Second Amended Answer and Counterclaim; denying Plaintiffs' Cross Motion for Partial Summary Judgment and denying Plaintiffs' Motion for Removal of Defendant as Trustee; denying Plaintiffs' Motion for Sanctions and denying Plaintiffs' Motion for Court to Deem Admitted Request for Admissions served on the Wayne County School District; and we instead focus our analysis based on a singular dispositive issue on direct appeal.

¶14. Because the single issue on direct appeal disposes of the matter, we consider only whether the trial court erred by failing to grant summary judgment to Wayne County School District because Quitman County failed to timely submit student lists as required by statute.

### STANDARD OF REVIEW

¶15. "The standard of review employed by this Court for review of a chancellor's decision is abuse of discretion." *Alexis v. Black*, 283 So. 3d 1105, 1107 (Miss. 2019) (internal quotation marks omitted) (quoting *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000)). Appellate courts "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." *Id.* at 1107-08 (internal quotation marks omitted) (quoting *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 880 (Miss. 1999)). "Abuse of discretion is found when the reviewing court has a 'definite and firm conviction' that the

8

court below committed a clear error of judgment and the conclusion it reached upon a weighing of the relevant factors." ***McCord v. Healthcare Recoveries, Inc.***, 960 So. 2d 399, 405 (Miss. 2007) (internal quotation marks omitted) (quoting ***Ill. Cent. R.R. v. McDaniel***, 951 So. 2d 523, 526 (Miss. 2006)). "[I]f the chancellor's findings are unsupported by substantial credible evidence, [the appellate court] must reverse." ***Gulf Coast Rsch. Lab'y v. Amaraneni***, 877 So. 2d 1250, 1252 (Miss. 2004) (emphasis omitted) (internal quotation marks omitted) (quoting ***Frierson v. Delta Outdoor Inc.***, 794 So. 2d 220 (Miss. 2001)). Questions of law, on the other hand, are reviewed de novo. ***Alexis***, 283 So. 3d at 1105 (citing ***McNeil***, 753 So. 2d at 1063).

## DISCUSSION

I. **Whether the chancery court erred in its application of Sections 29-3-119, 29-3-121 and 29-3-123 to Quitman School District's claims determining that Quitman School District was entitled to judgment against Wayne County School District for sixteenth section revenue received and administered by Wayne County School District from 1983 through 2009.**

¶16.    Under Section 29-3-121, "[it shall be the duty of the superintendent of each school district to make or cause to be made annual lists of the children enrolled in the schools of such district and who reside in such district, which lists shall be based upon the end of the first month enrollment required to be reported to the State Department of Education for the then current school year." Miss. Code Ann. § 29-3-121. "The lists shall be made separately as to the townships in which such children reside[,]" "shall be filed with the superintendent of the custodial school district on or before December 31 of each year," and "shall be used in making the division of the available funds of each township during the ensuing calendar

9

year, as provided by Section 29-3-119." *Id.* In 1999, Section 29-3-121 was amended to state, "[a]ny school district failing to timely provide the list to the superintendent of the custodial school district shall forfeit its right to such funds" unless the school boards of the districts execute a written agreement to the contrary. *Id.*

¶17. The same section was also amended in 1990 to include "[a]ny district entitled to [a *pro rata* share of the available township funds] which is not paid promptly [pursuant to the terms and conditions of Section 29-3-123] may assert a claim against the custodial school district for its share of the funds *not later than* twelve (12) months from the end of the calendar year in which the custodial school district collected such funds." Miss. Code Ann. § 29-3-119(4) (emphasis added).

¶18. Section 29-3-123 states that it is "unlawful" for any township funds to be paid over to school districts as provided in Sections 29-3-115 through 29-3-123 when two or more school districts or parts of school districts are in the township "*until* lists of the children residing in each district or part of district within such township who are enrolled in the schools thereof have been made as required under Section 29-3-121." Miss. Code Ann. § 29-3-123 (Rev. 2020) (emphasis added). "Such lists shall be made annually *before* any payment of the *expendable* sixteenth section revenues shall be made to school districts as provided in Sections 29-3-115 through 29-3-123." *Id.* (emphasis added). Any school board member or superintendent who orders payment of funds in violation of the provisions of this section "shall be liable upon his bond for the amount so paid." *Id.*

¶19. No statutory provision exists permitting a noncustodial district the opportunity to

10

recreate the requisite lists of educable children to receive payment under Sections 29-3-115 through -123.

¶20. Here, substantial briefing and arguments were presented to the chancery court concerning the attorney general's interpretation of Section 29-3-119(4) and the constitutionality and enforceability of the twelve month time period, described by the attorney general as a statute of limitations. Wayne County School District has held out an alternative interpretation of the time period set forth in Section 29-3-119(4), contending that it is not a statute of limitation, but rather a legislative prescription governing the method and procedure for the allocation of shared revenue. The twelve month period contained in Section 29-3-119 and the forfeiture provision contained in Section 29-3-121 are legislative directives to school districts governing the manner in which sixteenth section revenue from shared townships is to be administered.

¶21. Quitman School District contends the twelve month time period under Section 29-3-119(4) conflicts with article 4, section 104, of the Mississippi Constitution and with Section 15-1-51, which bar the running of a statute of limitations against the state or any of its political subdivisions. Agreeing with Quitman School District, the chancery court determined that the decision in *Jones County School District*, 111 So. 3d 588, applied to prevent the application of the one-year period. In *Jones County School District*, we found that the statute of limitations did not apply to the school district's request for refund of improperly paid oil and gas severance taxes on royalty interests derived from oil and gas production on sixteenth-section school land leased by school district to oil company, where

11

state constitutional provision expressly provided that the statute of limitations did not run against the state or any of its subdivisions. *Id.*

¶22. The chancery court declared Sections 29-3-119(4) and -121 unenforceable and unconstitutional. There is a presumption that acts of the legislature are valid, and the unconstitutionality of an act "must be proved beyond a reasonable doubt before it will be declared invalid." *Chamberlin v. City of Hernando*, 716 So. 2d 596, 601 (Miss. 1998) (citing *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980)).

¶23. We first note that in Black's Law Dictionary, the term statute of limitations is defined as "[a] law that bars claims after a specified period; specif., a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Statute of Limitations*, Black's Law Dictionary (11th ed. 2019). We hold that the language of the statute stating that "Any school district failing to timely provide the list to the superintendent of the custodial school district shall forfeit its right to such funds" is not a statute of limitations that establishes a time limit for bringing a lawsuit. Rather, it is a condition precedent school districts must fulfill.

¶24. Our holding comports with the Court's earlier applications of article 4, section 104, of the Mississippi Constitution. In *Jones*, for example, the Court applied section 104 and its statutory twin, Mississippi Code Section 15-1-15, to Mississippi Code Section 27-73-5. *Jones*, 111 So. 3d at 606-07. Section 27-73-5 provides, in pertinent part, "*[A]ll suits* by any taxpayer for the recovery of any privilege, income, franchise, or other excise tax, and all applications or proceedings for any refund or credit of these taxes shall be filed or made

12

within three (3) years next after the return was filed . . . . (Emphasis added.) Section 27-73-5 by its plain terms limits the time in which suit can be brought and is a statute of limitations. In *Town of Tutwiler v. Gibson*, 117 Miss. 879, 78 So. 926 (Miss. 1918), we held that the time for taking an appeal is not a statute of limitations prohibited by article 4, section 104. *Gibson*, 78 So. at 926-27. Not every time limit is a statute of limitations.

¶25. Quitman School District asks that the Court not apply the 1999 amendment of Section 29-3-121 that added the provision stating "[a]ny school district failing to timely provide the list to the superintendent of the custodial school district shall forfeit its right to such funds" because the period of time when payment was not received occurred before the legislative action. However, this Court has held:

> A statute will not be given retroactive effect unless it is manifest from the language that the legislature intended it to so operate. It will not be construed as retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is. In short, these cases illustrate a well-settled attitude of statutory interpretation: A preference that it be prospective only, and a requirement that there should be a clearly expressed intent in the act to make it retrospective.

*Mladinich v. Kohn*, 186 So. 2d 481, 483 (Miss. 1966) (citations omitted).

¶26. Unlike in *Mladinich*, the Legislature manifestly included language in its 1999 amendment to the code that clearly evinced the importance of timeliness in providing lists by placing a district on notice of forfeiture if not met. Our court upheld this language construction in *Cellular South, Inc. v. BellSouth Telecommunications, LLC*, 214 So. 3d 208, 216 (Miss. 2017), in which we held that retroactivity of an amendment is a nonissue when the Legislature makes a clear pronouncement of rights in making and implementing

13

laws.

## CONCLUSION

¶27.    The governing statutes discussed above place the burden on the noncustodial school district to provide student lists to the custodial school district, and Section 29-3-123 makes it *unlawful* for the custodial school district to pay over "until the lists . . . have been made." In other words, not only does the custodial school district not have a duty to hold or pay money for the noncustodial district absent the student list, the law forbids it.  Because the one-year period delineated in Section 29-3-119(4) does not place a time limit on litigation but rather a time limit on when a noncustodial district may make a claim with a custodial district, it is not a statute of limitations.  Commensurate with our duty to presume the validity of legislative enactments, we reverse the judgment of the trial court and render judgment in favor of Wayne County School District.

¶28.    **ON DIRECT APPEAL: REVERSED AND RENDERED. ON CROSS-APPEAL: AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.  GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, P.JJ.**

**GRIFFIS, JUSTICE, DISSENTING:**

¶29.    This litigation considers who is entitled to $1,101,413 in sixteenth-section trust funds acquired from oil and gas production in a township shared by Wayne County School District (WCSD) and Quitman School District (QSD).

¶30.    The majority fails to cite legal authority to support its decision.  It cites no authority to define a statutory condition precedent or how a statutory condition precedent differs from

14

a statute of limitations. Therefore, I respectfully dissent.

> I.     *The Sixteenth-Section Funds at Issue*

¶31.    This case considers funds received from an oil and gas well in shared sixteenth-section trust funds. "Board of Education 16-14-2 well" is a producing well located in Section 16, Township 10 North, Range 7 West. This well has been producing oil and gas since September 1989. WCSD has received royalties from this well since 1989.

¶32.    From September 1981 through September 1998, WCSD did not pay QSD any of the available shared sixteenth-section trust funds, whether principal or expendable, and without regard as to the source of such trust funds, whether from timber sales, surface leases, right-of-ways, or QSD's share of royalties from the board of education 16-14-2 oil and gas well.

¶33.    From October 1998 through December 2011, WCSD received oil and gas royalties with knowledge that, at a minimum, QSD was entitled to the interest on the royalty payments, yet WCSD did not report or pay anything by way of oil and gas royalties to QSD until December 6, 2011. The first payment by WCSD to QSD from the board of education 16-14-2 well was on December 6, 2011, in the sum of $457,751.03. This payment covered the period from January 2010 through November 2011. Also, WCSD failed to identify or segregate all the oil and gas royalties attributable to QSD's proportional share.

¶34.    From 1981 through 1998, WCSD spent timber revenues and surface lease revenues without segregating and without submitting or receiving a list of educable children to and from QSD. WCSD did not provide any accountings, reports, or payments of sixteenth-

section trust revenues of any type on any of the shared township and ranges until October 19, 1998, when WCSD made its first payment to QSD in the sum of $9,232.91.

¶35. WCSD admitted in its answer that it owes QSD royalties and interest in the sum of $541,358.94 from 2001 to 2011. Of that amount, the sum of $57,369.99 is for only simple interest on the royalty payments accruing during that time period. Yet none of the funds identified as being due to QSD were set aside and segregated by WCSD for the benefit of QSD school children.

¶36. QSD brought this litigation and claimed that WCSD has failed to and has refused to pay QSD its share of accrued interest on the royalty payments and to provide accountings to QSD for any of the sixteenth-section trust revenues generated from all sources on the shared township and ranges managed by WCSD covering the period of July 1, 1978, through June 30, 1998. Futher, QSD argued that WCSD has failed and refused to provide accountings to QSD for any of the oil and gas revenues WCSD received prior to the period covered. QSD also argued that WCSD has now withheld payments from QSD of admittedly owed accrued interest on oil and gas royalties, as well as accrued interest, for more than nine and a half years, since QSD's filing of this civil action in December 2011. WCSD has not segregated, and it has no idea where the expendable funds received from shared townships and ranges for years prior to the 1998-99 fiscal year are currently located or even if they are currently held. And, finally, QSD claims that it submitted its list of educable children to WCSD as directed by the trial court, and WCSD failed, refused, and neglected to furnish QSD any lists of educable children for any years prior to the 1998-99 school year until the submission of

16

its proposed trial lists of educable children on June 20, 2019.

¶37.   QSD claims that WCSD has wrongfully withheld more than $1 million from QSD's school children.   Yet, at the same time, WCSD has on deposit in its sixteenth-section principal fund the sum of $83,138,376.48, and WCSD recently spent approximately $3,600,000 on a football stadium renovation.

   *II.    Ownership of Sixteenth-Section Lands*

¶38.   The state of Mississippi "is the titleholder of sixteenth-section lands[.]" ***Jones Cnty. Sch. Dist. v. Dep't of Revenue***, 111 So. 3d 588, 595 (Miss. 2013) (citing ***Hill v. Thompson***, 564 So. 2d 1, 5-6 (Miss. 1989)).   The sixteenth-section land at issue here is not titled in or owned by WCSD.   The land is owned by the state of Mississippi.   Thus, the income earned from the sixteenth-section land is owned by the state of Mississippi.

¶39.   Mississippi law provides that the state of Mississippi holds the sixteenth-section land "in trust for the benefit of the public schools[.]" Miss. Code Ann. § 29-3-1(1) (Rev. 2020). The trust beneficiaries are "the inhabitants of the respective townships."   ***Jones Cnty. Sch. Dist.***, 111 So. 3d at 595 (internal quotations marks omitted) (quoting ***Turney v. Marion Cnty. Bd. of Educ.***, 481 So. 2d 770, 777 (Miss. 1985)).   Article 8, section 211, of the Mississippi Constitution identifies "sixteenth-section lands as having been 'reserved for the support of township schools[.]'" ***Jones Cnty. Sch. Dist.***, 111 So. 3d at 595 (quoting Miss. Const. art 8, § 211).   Said differently, the state of Mississippi owns sixteenth-section land and uses the lands for the use and benefit of the public school children of that township.

¶40.   In ***Jones County School District***, the Court explained the local school district's role

17

in the administration of sixteenth-section lands:

> The State, as titleholder, has delegated general supervisory authority over sixteenth-section lands to the Secretary of State. *Turney*, 481 So. 2d at 777; Miss. Code Ann. § 29-3-1(1) (Rev. 2010). As a matter of practical necessity, these lands are managed through local county boards of education. *Turney*, 481 So. 2d at 777. Section 29-3-1(1) states that: "The board of education under the general supervision of the [Secretary of State], shall have control and jurisdiction of [sixteenth-section] lands and of all funds arising from any disposition thereof heretofore or hereafter made." Miss. Code Ann. § 29-3-1(1) (Rev. 2010). School boards are directed to manage these lands, and all funds derived therefrom, as trust property and to ensure that adequate compensation is received for all usage. Miss. Code Ann. § 29-3-1(1) (Rev. 2010). School boards thus stand as "trustee[s] and as trust supervisors or managers" of sixteenth-section lands. *Hill*, 564 So. 2d at 7.

> In their role as trustees, school boards are authorized and empowered to lease sixteenth-section lands for oil, gas, and mineral exploration. Miss.Code Ann. § 37-7-305 (Rev. 2007); *see also* Miss. Code Ann. § 29-3-99 (Rev. 2010). Royalties received from the sale of oil and gas are deposited into the local school board's principal fund, which Section 29-3-113 says "shall be a permanent township fund." Miss. Code Ann. § 29-3-113 (Rev. 2010). Further, Section 29-3-109 directs that "[a]ll expendable funds derived from sixteenth section or lieu lands shall be credited to the school districts of the township in which such sixteenth section lands may be located." Miss. Code Ann. § 29-3-109 (Rev. 2010). That statute also states that "[s]uch funds shall not be expended except for the purpose of education of the educable children of the school district to which they belong, or as otherwise may be provided by law." Miss. Code Ann. § 29-3-109 (Rev. 2010).

*Id.* at 595-96 (alterations in original).

¶41. Here, WCSD does not own the land or the funds at issue here. The state of Mississippi does. WCSD and the state of Mississippi holds these lands and funds in trust for the benefit of the public school children of that township, and this includes the school children of both QSD and WCSD. WCSD is, however, the custodian of the funds and assists the state of Mississippi in its obligation as trustee in the management and administration of

18

sixteenth-section lands and the funds derived from such sixteenth-section lands. WCSD has no ownership or possessory right to the funds at issue here. However, WCSD as the custodian does owe fiduciary obligations to QSD and QSD's school children.

III. *Statutes of limitation do not run against the state of Mississippi.*

¶42. The Mississippi Constitution clearly provides that "[s]tatutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporate thereof." Miss. Const. art 4, § 104. The Legislature reaffirmed this principle by statute. *See* Miss. Code Ann. § 15-1-51 (Rev. 2019). "Since Section 104 was enacted, this Court consistently has upheld the 'immunity' a governmental entity enjoys from these provisions." ***Jones Cnty. Sch. Dist.***, 111 So. 3d at 606 (citing ***Enroth v. Mem'l Hosp. at Gulfport***, 566 So. 2d 202, 206 (Miss. 1990)); *see also* ***Murphree v. Aberdeen-Monroe Cnty. Hosp.***, 671 So. 2d 1300 (Miss. 1996); ***Miss. State Highway Comm'n v. New Albany Gas Sys.***, 534 So. 2d 204, 207 (Miss. 1988).

¶43. This constitutional prohibition applies even when both parties to the litigation are state entities. ***Jones Cnty. Sch. Dist.***, 111 So. 3d at 607 (citing ***Town of Crenshaw v. Panola Cnty.***, 115 Miss. 891, 76 So. 741 (Miss. 1917)). In ***Jones County School District***, the State Tax Commission sought to assert the statute of limitations contained in Mississippi Code Section 27-73-5 against the Jones County School District to preclude recovery of overpaid tax revenues beyond three years. ***Jones Cnty. Sch. Dist.***, 111 So. 3d at 591. This Court rejected the argument and ruled that the purpose of article 4, section 104, and Section 15-1-51 "is that the body politic should not suffer because of the neglect or procrastination

19

of its public servants in promptly asserting and protecting rights of the general public in civil matters." *Id.* at 606 (internal quotation marks omitted) (quoting *New Albany Gas Sys.*, 534 So. 2d at 207.

> IV.    *Statutory Conditions Precedent or Statutes of Limitation?*

¶44.   The majority has determined that the time periods included in Mississippi Code Sections 29-3-119, -121, and -123 (Rev. 2020) are statutory conditions precedent and not statutes of limitation.  Maj. Op. ¶ 27.  The trial court, however, determined that these time periods were statutes of limitation, and it held they were unconstitutional.  I agree with the trial court.

> A.    *The Statutes at Issue*

¶45.   There are three statutes relevant to WCSD's role as trustee over the sixteenth-section funds at issue here.  First, Section 29-3-119(4) provides:

> The school district having jurisdiction and control of the sixteenth section . . . in the township (the "custodial school district") shall pay to each other school district lying wholly or partly in the township which is entitled to a part of the township funds the district's pro rata share of the available township funds, as determined from the lists of children prepared pursuant to Section 29-3-121, promptly after collecting such funds. The custodial school district shall make its books and records pertaining to the income and funds of any shared township available for inspection and copying to all other school districts sharing in the income from the township upon reasonable notice of such request. Any district entitled to such funds which is not paid promptly may assert a claim against the custodial school district for its share of the funds not later than twelve (12) months from the end of the calendar year in which the custodial school district collected such funds.

Miss. Code Ann. § 29-3-119(4) (Rev. 2020).  Second, Section 29-3-121 provides:

> It shall be the duty of the superintendent of each school district to make or cause to be made annual lists of the children enrolled in the schools of such

20

district and who reside in such district, which lists shall be based upon the end of the first month enrollment required to be reported to the State Department of Education for the then current school year. The lists shall be made separately as to the townships in which such children reside. Such lists shall be filed with the superintendent of the custodial school district on or before December 31 of each year, and the lists shall be used in making the division of the available funds of each township during the ensuing calendar year, as provided by Section 29-3-119. The superintendent of the custodial school district shall make such lists available, upon request, to each school district sharing in the revenues of the township. Any school district failing to timely provide the list to the superintendent of the custodial school district shall forfeit its right to such funds unless the school board of the custodial school district and the school board of the other district or districts entitled to such funds have executed a written agreement providing for the distribution of such funds in a manner agreed upon by the school districts.

Miss. Code Ann. § 29-3-121 (Rev. 2020). Third, Section 29-3-123 provides:

It shall be unlawful for any township funds to be expended by the custodial school district or paid over to school districts as provided in Sections 29-3-115 through 29-3-123, where there are two (2) or more school districts or parts of school districts in the township until lists of the children residing in each district or part of district within such township who are enrolled in the schools thereof have been made as required under Section 29-3-121. Such lists shall be made annually before any payment of the expendable sixteenth section revenues shall be made to school districts as provided in Sections 29-3-115 through 29-3-123. Any member of a local school board or any superintendent of a school district who shall order the payment of such funds or who shall issue a pay certificate therefor in violation of the provisions of this section shall be liable upon his bond for the amount so paid.

Miss. Code Ann. § 29-3-123 (Rev. 2020).

### B. *What is a statutory condition precedent?*

¶46. The majority concludes that these statutes create not a statute of limitations, but instead a statutory condition precedent. Maj. Op. ¶ 23. The majority does not explain what a statutory condition precedent is. The majority does not cite any legal authority that discusses the legal effect of a statutory condition precedent. And, finally, the majority also

21

does not explain how a statutory condition precedent differs from a statute of limitations. Like the majority, I find no Mississippi legal authority to discuss or explain a statutory condition precedent. There is simply no legal precedent for the majority's holding.

### C. What is a statute of limitations?

¶47. A statute of limitations is "[a] law that bars claims after a specified period . . . ." *Statute of Limitations*, Black's Law Dictionary (11th ed. 2019). The specified time periods contained in Sections 29-3-119 and -121 are certainly statutes of limitation. Indeed, both of these statutes "bar[] claims after a specified period[.]" *Id.*

### D. Analysis

¶48. The majority has framed the ultimate question of this appeal as whether these statutes are statutory conditions precedent or statutes of limitation.

¶49. The answer is clear. The statutes at issue are statutes of limitation. Section 29-3-119(4) specifically limits any claim for unpaid funds to "twelve (12) months from the end of the calendar year in which the custodial school district collected such funds." Miss. Code Ann. § 29-3-119(4). Likewise, under Section 29-3-121, the custodial school district forfeits its right to such funds if it fails to provide a list of the enrolled children "on or before December 31 of each year." Miss. Code Ann. § 29-3-121. And finally, under Section 29-3-123, any superintendent or school board member may be personally liable if they violate these statutes. Miss. Code Ann. § 29-3-123.

¶50. Without a doubt, these are statutes of limitation. Thus, statutes of limitations may not run against the state of Mississippi. Therefore, the learned chancellor was correct to rule

these limitations periods were unconstitutional.

¶51. It is interesting that the majority decides that these were statutory conditions precedent, an argument not raised by WCSD. Instead, WCSD claims the statutes at issue "are not unconstitutional statutes of limitation" but rather "a legislative pronouncement governing the method and *procedure* for the allocation of shared revenue." (Emphasis added.) Rules of procedure are the sole province of the courts. *Newell v. State*, 308 So. 2d 71, 78 (Miss. 1975). The Legislature has no authority to enact rules of procedure. *Id.* So, assuming the time limitation set forth in Sections 21-3-119 and 21-3-121 are truly procedural, then they are unconstitutional on their face because the Legislature had no authority to enact them in a statute.

¶52. WCSD further asserts that "[t]he twelve month period contained in Section 29-3-119 and the forfeiture provision contained in Section 29-3-121 are *legislative directives* to school districts governing the manner in which sixteenth section revenue from shared townships is to be administered." (Emphasis added.) But WCSD admits that these "directives allow no room for relief other than what is specifically stated." "[A]llow[ing] no room for relief" is another way of saying "limiting relief."

¶53. Mississippi attorney general opinions are helpful and persuasive. *See Blackwell v. Miss. Bd. of Animal Health*, 784 So. 2d 996, 1000 (Miss. Ct. App. 2001) ("[a]n attorney general's opinion is entitled to careful consideration and is regarded as persuasive[.]" (citing *State ex rel. Holmes v. Griffin*, 667 So. 2d 1319, 1326 (Miss. 1995))). In 1999, the attorney general stated, "[w]e are aware of [the] Mississippi Legislature's recent amendment to *Miss.*

23

*Code Ann. § 29-3-119* stating that July 1, 1999 is the effective date for a new *statute of limitations* period on such claims." Miss. Att'y Gen. Op., 1999 WL 791695, *Wyly*, at *2 (July 2, 1999) (emphasis added). Then, in 2005, the attorney general concluded that "[t]he School Boards do have to account for past funds received and pay those funds to the other board in accordance with the last sentence of Section 29-3-127; however, there is a *statute of limitations provided in Miss. Code Ann. Section 29-3-119* regarding the allocation of funds among districts . . . ." Miss. Att'y Gen. Op., 2005 WL 3775650, *Riley*, at *2 (Nov. 18, 2005) (emphasis added).

¶54. In 2011, WCSD obtained an attorney general opinion that determined that these statutory provisions were in fact statutes of limitation. WCSD asked the attorney general: "Is there a statute of limitations as to how far back in time the Wayne County School Board will have to go to pay the Quitman School District in full for unpaid shared revenues?" Miss. Att'y Gen. Op., 2011 WL 6813973, *Dickerson*, at *1 (Nov. 4, 2011). The attorney general replied, "Miss. Code Ann. Section 29-3-119 establishes a one year statute of limitations." *Id.*

¶55. These are clearly statutes of limitation. I would affirm the chancellor's judgment.

> V.     *WCSD breached its fiduciary duty owed to QSD school children.*

¶56. WCSD, as the custodial school district, breached its fiduciary duty owed to QSD school children.[1] "From their beginnings, sixteenth-section lands have been held to be trust lands for the benefit of public schools." ***Jones Cnty. Sch. Dist.***, 111 So. 3d at 595 (citing

---

[1] The chancellor found that WCSD did not breach any fiduciary duty.

24

*Hill*, 564 So. 2d at 5-6). Indeed, "it is clear that, under Mississippi state law, sixteenth-section lands are *held in a binding trust*." **Id.** (emphasis added) (citing ***Lipscomb v. Columbus Mun. Separate Sch. Dist.***, 269 F.3d 494, 507-08 (5th Cir. 2001)). "The State is the titleholder of sixteenth-section lands, which it holds 'in trust for the benefit of the public schools.'" **Id.** (quoting *Hill*, 564 So. 2d at 6; Miss. Code Ann. § 29-3-1(1)). "The beneficiaries, more specifically, are 'the inhabitants of the respective townships.'" **Id.** (quoting *Turney*, 481 So. 2d at 777).

¶57. While the State is the titleholder, "[a]s a matter of practical necessity, these lands are managed through local county boards of education." **Id.** at 596 (citing *Turney*, 481 So. 2d at 777). "School boards are directed to manage these lands, and all funds derived therefrom, as trust property and to ensure that adequate compensation is received for all usage." **Id.** (citing Miss. Code Ann. § 29-3-1(1) (Rev. 2010)). "School boards thus stand as 'trustee[s] and as trust supervisors or managers' of sixteenth-section lands." **Id.** (citing *Hill*, 564 So. 2d at 7). "[T]he Board may exercise the general powers of a trustee with the same general restrictions and general liabilities of a trustee." *Turney*, 481 So. 2d at 777. "As to the standard of care chargeable to the Board in the performance of its statutory duty to act as a trustee, this Court holds that the same standard of care applicable to a general trustee applies to the Board of Education." **Id.**

¶58. The Legislature has set forth the standard of care a trustee must adhere to and the various duties imposed upon a trustee. A trustee's duty of loyalty requires that "[a] trustee shall administer the trust solely in the interests of the beneficiaries." Miss. Code Ann. §

25

91-8-802(a) (Rev. 2021). "If a trust has two (2) or more beneficiaries, the trustee *shall act impartially* in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests and the purposes of the trust." Miss. Code Ann. § 91-8-803 (Rev. 2021) (emphasis added). In addition, "[a] trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." Miss. Code Ann. § 91-8-804 (Rev. 2021). Similarly, "[a] trustee shall take reasonable steps to take control of and protect the trust property." Miss. Code Ann. § 91-8-809 (Rev. 2021). Moreover, "[a] trustee shall keep the beneficiaries of the trust . . . reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." Miss. Code Ann. § 91-8-813(a)(1) (Rev. 2021).

¶59.   "A trustee has a duty to act with due regard to his obligation as a fiduciary." *Cassibry v. Cassibry*, 217 So. 3d 698, 707 (Miss. Ct. App. 2017) (internal quotation marks omitted) (quoting *Wilbourn v. Wilbourn*, 106 So. 3d 360, 371 (Miss. Ct. App. 2012)). A fiduciary is defined as "someone who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, loyalty, due care, and disclosure." *Fiduciary*, Black's Law Dictionary (11th ed. 2019). "[T]he touchstone of the fiduciary relationship between a trustee and his beneficiaries is loyalty." *Cassibry*, 217 So. 3d at 707 (internal quotation marks omitted) (quoting *Wilbourn*, 106 So. 3d at 371). Thus, "[t]he interests of the beneficiaries are paramount, and nothing

26

should be done that would diminish their rights under the terms of the agreement and granted by law." *Id.* (internal quotation marks omitted) (quoting *Wilbourn*, 106 So. 3d at 371). Above all, "[o]ne in a fiduciary position, such as a trustee, cannot take advantage of that position of trust in administering the assets entrusted to him or her." *Id.* (quoting *Wilbourn*, 106 So. 3d at 371).

¶60. In some cases, such as here, a school board occupies a fiduciary relationship with a neighboring school district's schoolchildren. *See* Miss. Code Ann. § 29-3-119. The Mississippi attorney general has considered the fiduciary relationship between two school districts with shared townships. Miss. Att'y Gen. Op., No. 2003-0163, 2003 WL 21363321, *Cheney*, at *2 (May 16, 2003). The attorney general was asked to clarify the relationship between the custodial school district and the neighboring school district. *Id.* The attorney general opined that the custodial district's "decision must be made as a trustee for all of the school districts involved." *Id.* at *3. The attorney general noted that because the subject matter was "trust property," "the board of education ha[d] a duty to determine [what was] fair to all school districts." *Id.* at *4. The attorney general opinion was based on the fact that "the inhabitants of the respective townships are the beneficiaries of the trust." *Id.* (citing *Jones v. Madison Cnty.*, 72 Miss. 777, 18 So. 87 (1895)). Thus, the attorney general concluded that the custodial school district is "under a duty to enforce the provisions of the trust and to determine what is in the best interest of all of the inhabitants of the township." *Id.*

¶61. Here, WCSD, as trustee, had "a duty to act with due regard to [its] obligation as a

27

fiduciary." ***Cassibry***, 217 So. 3d at 707. Indeed, WCSD had a duty to keep QSD "reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." Miss. Code Ann. § 91-8-813(a)(1). By failing to inform QSD of the funds and the amount of the funds, WCSD breached its fiduciary duty. Stated differently, it was a breach of its fiduciary duty for WCSD to receive the funds, remain silent, and then assert a procedural bar to those funds, all while reaping the benefit of the funds. Clearly, WCSD failed to "act for the benefit of [QSD] on all matters within the scope of their relationship." *Fiduciary*, Black's Law Dictionary (11th ed. 2019).

¶62. I find the funds belong to and were intended for the benefit of QSD. As such, QSD is entitled to its proportionate share of all sixteenth section funds received and administered by WCSD.

**KITCHENS AND KING, P.JJ., JOIN THIS OPINION.**